No. 20-50407

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

─────────────────────

TEXAS DEMOCRATIC PARTY, GILBERTO HINOJOSA;
JOSEPH DANIEL CASCINO, SHANDA MARIE SANSING;
BRENDA LI GARCIA,

*Plaintiffs-Appellees,*

v.

GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS, RUTH HUGHS,
TEXAS SECRETARY OF STATE, KEN PAXTON,
TEXAS ATTORNEY GENERAL,

*Defendants-Appellants.*

─────────────────────

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
No. 5:20-cv-00438-FB

─────────────────────

## BRIEF OF PLAINTIFFS-APPELLEES

─────────────────────

Chad W. Dunn
Brazil & Dunn, LLP
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: (512) 717-9822
Facsimile: (512) 515-9355
chad@brazilanddunn.com


Dicky Grigg
Law Office of Dicky Grigg, P.C.
4407 Bee Caves Road, Suite 111
Austin, Texas 78746
Telephone: 512-474-6061
Facsimile: 512-582-8560
dicky@grigg-law.com

K. Scott Brazil
Brazil & Dunn, LLP
13231 Champion Forest Drive
Suite 406
Houston, Texas 77069
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
scott@brazilanddunn.com


Martin Golando
The Law Office of Martin
Golando, PLLC
N. Saint Mary's, Ste. 700
San Antonio, Texas 78205
(210) 892-8543
martin.golando@gmail.com


Robert Leslie Meyerhoff
Texas Democratic Party
314 E. Highland Mall Blvd.
Suite 508
Austin, TX 78752
rmeyerhoff@txdemocrats.org

*Counsel for Appellees*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................... iii

TABLE OF AUTHORITIES .......................................................... iv

CERTIFICATE OF INTERESTED PERSONS ......................................... 1

STATEMENT REGARDING ORAL ARGUMENT ................................. 2

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ................. 3

INTRODUCTION ........................................................................ 4

STATEMENT OF THE CASE ........................................................ 8

  I.  FACTUAL BACKGROUND ...................................................... 8

  II.  PROCEDURAL BACKGROUND ............................................ 12

SUMMARY OF THE ARGUMENT ............................................... 18

ARGUMENT .............................................................................. 19

  I.  Plaintiffs Are Likely to Succeed on the Merits because Texas Election Code Section 82.003 Violates the Twenty-Sixth Amendment .................................................................... 19

  II.  The District Court Correctly Determined that the Other Preliminary Injunction Factors Were Satisfied ...................... 35

  III.  Sovereign Immunity Does Not Bar Plaintiffs' Claims .................. 39

  IV.  The District Court's Holding that All Plaintiffs Have Standing to Bring their Claims Should Be Affirmed ......................... 44

  V.  *Pullman* Abstention Should Not Be Exercised in this Case .......... 50

  VI.  The Political Question Doctrine Is Inapplicable Here ................. 53

CONCLUSION ........................................................................... 54

CERTIFICATE OF SERVICE ....................................................... 57

CERTIFICATE OF ELECTRONIC COMPLIANCE .......................... 58

CERTIFICATE OF COMPLIANCE ................................................ 59

# TABLE OF AUTHORITIES

## Cases

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n,*
  135 S. Ct. 2652 (2015) ......................................................... 19

*Barr v. American Assn. of Political Consultants, Inc.,*
  *2020 WL 3633780 (U.S. July 6, 2020)* ............................... 36

*Cabral v. City of Evansville, Ind.,*
  759 F.3d 639 (7th Cir. 2014) ............................................... 39

*California v. Texas,*
  140 S. Ct. 1262 (2020) ......................................................... 48

*Charles H. Wesley Educ. Found., Inc. v. Cox,*
  408 F.3d 1349 (11th Cir. 2005) ........................................... 39

*City of Austin v. Abbott,*
  385 F. Supp. 3d 537 (W.D. Tex. 2019) ............................... 42

*City of Austin v. Paxton,*
  943 F.3d 993 (5th Cir. 2019) ........................................ 40, 41

*Colorado Project-Common Cause v. Anderson,*
  495 P.2d 220 (Colo. 1972) ................................................... 23

*Colorado River Water Conservation District v. United States,*
  424 U.S. 800 (1976) ............................................................. 51

*County of Allegheny v. Frank Mashuda Co.,*
  360 U.S. 185 (1959) ............................................................. 51

*Crawford v. Marion Cty. Election Bd.,*
  472 F.3d 949 (7th Cir. 2007), *aff'd,* 553 U.S. 181 (2008) .................... 50

*Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.,*
  950 F.3d 790 (11th Cir. 2020) ............................................. 29

*Democratic Party of Georgia, Inc. v. Crittenden,*
  347 F. Supp. 3d 1324 (N.D. Ga. 2018) ............................... 49

*Duncan v. Poythress,*
  657 F.2d 691 (5th Cir. 1981) ............................................... 51

*Elrod v. Burns,*
  427 U.S. 347 (1976) ............................................................. 54

*England v. Louisiana State Bd. of Med. Examiners*,
  375 U.S. 411 (1964) ............................................................. 53

*Ex parte Young*,
  209 U.S. 123 ................................................. 40, 41, 43, 44

*Fusilier v. Landry*,
  No. 19-30665, 2020 WL 3496856 (5th Cir. June 29, 2020) ................ 42

*Gray v. Johnson*,
  234 F. Supp. 743 (S.D. Miss. 1964) ..................................... 22

*Guinn v. United States*,
  238 U.S. 347 (1915) .................................................... 35

*Hancock Cty. Bd. of Supervisors v. Ruhr*,
  487 F. App'x 189 (5th Cir. 2012) ...................................... 48

*Harman v. Forssenius*,
  380 U.S. 528 (1965) ......................................... 26, 27, 28, 29

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................ 49, 50

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ................................................... 47

*In re Cao*,
  619 F.3d 410 (5th Cir. 2010) .......................................... 46

*In re Dairy Mart Convenience Stores, Inc.*,
  411 F.3d 367 (2d Cir. 2005) ........................................... 43

*In re Grand Jury Subpoena*,
  190 F.3d 375 (5th Cir. 1999) .......................................... 29

*In re State*,
  No. 20-0394, 2020 WL 2759629 (Tex. May 27, 2020) ................... 13, 52

*Jolicoeur v. Mihaly*,
  488 P.2d 1 (1971) ................................................. 21, 22

*Jones v. Governor of Fla.*,
  950 F.3d 795 (11th Cir. 2020) ..................................... 37, 38

*Lane v. Wilson*,
  307 U.S. 268 (1939) ............................................... 23, 27

v

*Louisiana Debating & Literary Ass'n v. City of New Orleans*,
42 F.3d 1483 (5th Cir. 1995) ................................................................. 51

*Luft v. Evers*,
2020 WL 3496860 (7th Cir. June 29, 2020) ........................................ 24

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................. 45

*McCarthy ex rel. Travis v. Hawkins*,
381 F.3d 407 (5th Cir. 2004) ............................................................... 44

*McDonald v. Bd. of Election Comm'rs of Chicago*,
394 U.S. 802 (1969) ................................................................. 29, 30, 31

*NAACP v. City of Kyle, Tex.*,
626 F.3d 233 (5th Cir. 2010) ............................................................... 49

*Obama for Am. v. Husted*,
697 F.3d 423 (6th Cir. 2012) ......................................................... 36, 39

*OCA-Greater Houston v. Texas*,
867 F.3d 604 (5th Cir. 2017) ......................................................... 40, 41

*Ostrom v. O'Hare*,
160 F. Supp. 2d 486 (E.D.N.Y. 2001) ................................................. 53

*Purcell v. Gonzales*,
549 U.S. 1 (2006) .................................................................................. 39

*Reno v. Bossier Par. Sch. Bd.*,
528 U.S. 320 (2000) .............................................................................. 28

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
140 S. Ct. 1205 (2020) ......................................................................... 12

*Rezzonico v. H & R Block, Inc.*,
182 F.3d 144 (2d Cir. 1999) ................................................................. 29

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
547 U.S. 47 (2006) ................................................................................ 45

*Saldano v. O'Connell*,
322 F.3d 365 (5th Cir. 2003) ............................................................... 53

*Siegel v. LePore*,
234 F.3d 1163 (11th Cir. 2000) ........................................................... 51

*Terrebonne Par. NAACP v. Jindal,*
 154 F. Supp. 3d 354 (M.D. La. 2015) ................................................. 43

*Texas v. United States,*
 945 F.3d 355 (5th Cir. 2019), *as revised* (Jan. 9, 2020), *cert. granted sub nom* ........................................................................................ 45, 48

*Texas Democratic Party v. Abbott,*
 2020 WL 3478784 (U.S. June 26, 2020) ............................................ 17

*Texas Democratic Party v. Abbott,*
 2020 WL 3579134 (U.S. July 2, 2020) ............................................... 18

*Texas Democratic Party v. Abbott,*
 961 F.3d 389 (5th Cir. 2020) ..................................................... *passim*

*Texas Democratic Party v. Abbott,*
 No. 19A1055, 2020 WL 3478784 (U.S. June 26, 2020) ...................... 32

*Texas Democratic Party v. Benkiser,*
 459 F.3d 582 (5th Cir. 2006) ...................................................... 47, 48

*Thompson v. Hous. Auth. of New Orleans,*
 689 F. App'x 324 (5th Cir. 2017) ....................................................... 53

*United States v. Georgia,*
 892 F. Supp. 2d 1367 (N.D. Ga. 2012) .............................................. 37

*United States v. Texas,*
 422 F. Supp. 917 (S.D. Tex. 1976) .................................................... 41

*Walgren v. Bd. of Selectmen of Town of Amherst,*
 519 F.2d 1364 (1st Cir. 1975) ............................................................ 24

*Walgren v. Howes,*
 482 F.2d 95 (1st Cir. 1973) .......................................................... 23, 24

*Williams v. Rhodes,*
 393 U.S. 23 (1968) ............................................................................. 20

*Williams v. Salerno,*
 792 F.2d 323 (2d Cir. 1986) .............................................................. 36

**Constitutional Provisions, Statutes and Rules**

52 U.S.C. § 20301 .................................................................................. 34

5th Cir. R. 25.2.1 ................................................................................... 58

5th. Cir. R. 25.2.13 ................................................................58

Federal Rule of Appellate Procedure 27(d)(2)(A) ...................59

Federal Rule of Appellate Procedure Rule 32(a)(5)................59

Federal Rule of Appellate Procedure Rule 32(a)(6)................59

TEX. CONST. ARTICLE III ................................................ *passim*

TEX. ELEC. CODE § 31.003.......................................... 41, 42

TEX. ELEC. CODE § 82.001-4........................................... 42

TEX. ELEC. CODE § 82.002(a) ......................................... 13

TEX. ELEC. CODE § 82.002............................................. 14

TEX. ELEC. CODE § 82.003............................................ *passim*

U.S. CONST. amend. XXVI................................................19

## CERTIFICATE OF INTERESTED PERSONS

1.  No. 20-50407; *Texas Democratic Party, Gilbert Hinojosa, Chair of the Texas Democratic Party, Joseph Daniel Cascino, Shanda Marie Sansing, and Brenda Li Garcia v. Greg Abbott, Governor Of Texas, Ruth Hughs, Texas Secretary Of State, Ken Paxton, Attorney General Of Texas.*

2.  The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Defendants-Appellants | Counsel |
|---|---|
| Greg Abbott, Gov. of Texas | Ken Paxton |
| Ruth Hughs, Texas Sec'y of State | Jeffrey C. Mateer |
| Ken Paxton, Atty. Gen. of Texas | Ryan L. Bangert |
| | Kyle D. Hawkins |
| | Lanora C. Pettit |

| Defendants | |
|---|---|
| Dana Debeauvoir, Travis Cnty. Clerk, | Sherine E. Thomas |
| | Cynthia Veidt |
| Jacquelyn F. Callanen, Bexar County Elections Admnistrator | Leslie W. Dippel |
| | Andrew Williams |
| | Shannon Talley |
| | Robert D. Green |

| Plaintiffs-Appellees | Counsel |
|---|---|
| | Chad W. Dunn |
| | K. Scott Brazil |
| | Dicky Grigg |
| | Martin Golando |

/s/ Chad W. Dunn
Counsel of Record for
Plaintiffs-Appellees

1

## STATEMENT REGARDING ORAL ARGUMENT

While oral argument would ordinarily be warranted given the weighty constitutional issue presented, plaintiffs-appellees request that oral argument be waived in this case if that would permit the court to decide the case more expeditiously.

# STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether the district court's injunction should be affirmed because, among other reasons, Texas's limitation of the right to cast a no-excuse mail-in ballot to only voters who are "65 years of age or older on election day," TEX. ELEC. CODE § 82.003, violates the Twenty-Sixth Amendment's directive that the right to vote "shall not be denied or abridged by the United States or by any State on account of age"?

# **INTRODUCTION**

By all metrics, including defendants-appellants' own, the State of Texas has lost control of the COVID-19 pandemic. The seven-day rolling average of new infections in the state has increased more than threefold since a panel of this Court issued a stay on June 4 of the District Court's preliminary injunction. ICUs are reaching capacity, testing has become increasingly difficult to obtain, and the Governor has banned elective surgeries in eight of the state's most populous counties to free up hospital space for what regrettably appears to be a rising tide of hospitalizations from COVID-19. In a shift from his position of mere weeks ago, the Governor has now stated that "[e]very Texan has a responsibility to themselves and their loved ones to . . . stay home if they can."

But it is not the State's tragic inability to contain the COVID-19 epidemic that compels affirmance of the District Court's Order – it is the Twenty-Sixth Amendment's unambiguous text that does.[1] In clear

---

[1] While the District Court found that plaintiffs were likely to succeed on the merits on several of their claims, plaintiffs seek affirmance of the District Court's finding of likelihood of success based on their Twenty-Sixth Amendment claims. Plaintiffs will continue to pursue permanent relief on other claims as well, but if the Court will not affirm the preliminary injunction on Twenty-Sixth Amendment grounds, it should

language that mirrors the relevant portions of the Fifteenth, Nineteenth, and Twenty-Fourth Amendments, the Twenty-Sixth Amendment commands that the right to vote may not be "denied or abridged" on "account of age." And just as this command countenances no differential treatment in terms of voting on the basis of race, gender, or payment of a poll tax, it is clear that differential treatment in terms of voting on the basis of age with respect to citizens over the age of 18 is similarly unconstitutional.

Defendants have offered no real explanation for why the Twenty-Sixth Amendment's language should be interpreted differently from that of the other amendments on which it is patterned. So instead, they erect a straw-man: that there is no constitutional right to vote by mail. *See* Opening Brief at 1-2, 12-13, 24-26. But the Twenty-Sixth Amendment claim does not argue for a constitutional right to vote by mail. Instead, the Twenty-Sixth Amendment requires that *if* the state has chosen to offer vote-by-mail as an option (as Texas has), it may not restrict that option on the basis of age.

---

vacate the injunction and return the case to the District Court for further proceedings.

In addition to their "constitutional right to vote by mail" straw man, defendants also seek to obscure the constitutional infirmity of Section 82.003 by arguing that it is COVID-19, not themselves, that is responsible for plaintiffs' harm.  But this argument misunderstands plaintiffs' injury and claims.  Plaintiffs' injury is both (a) that defendants are abridging their right to vote on the basis of their age (and thus they are being forced to vote in a less desirable way), and (b) that the manner in which they are being forced to vote creates a higher likelihood that they will be exposed to COVID-19.  That injury is directly traceable to the Texas Election Code and the state actors (*i.e.*, the defendants here) who enforce it.  While COVID-19 may have brought plaintiffs' claims into sharp relief, it is defendants' conduct which plaintiffs seek to enjoin.

Defendants' other rationales for reversing the District Court's injunction similarly lack merit.  The remaining preliminary injunction factors weigh in favor of affirming, not reversing, the District Court's preliminary injunction.  Sovereign immunity does not bar plaintiffs' claims because all defendants have a sufficient connection to the enforcement of the Texas Election Code.  All the individual plaintiffs easily meet the requirements for Article III standing, as each has

suffered and will continue to suffer legally cognizable injuries because of defendants' actions, and TDP has both associational and organizational standing to pursue these claims. *Pullman* abstention is not appropriate in this case because the state court proceedings would not have resolved plaintiffs' federal constitutional claims, evidenced most prominently by the fact that the state court proceedings are now complete and plaintiffs' Twenty-Sixth Amendment claims remain. And the political question doctrine is inapplicable here because there are judicially discoverable and manageable standards for resolving this case.

At base, plaintiffs' argument is a simple one, grounded in the Constitution's text and the Supreme Court's ample precedent on what constitutes a denial or abridgment of the right to vote. The State of Texas can choose whether to offer vote by mail as an option to its citizens. But once it has chosen to do, it may not restrict that option on the basis of a citizen's age. The District Court's preliminary injunction should be affirmed.

## STATEMENT OF THE CASE

## I.    FACTUAL BACKGROUND

Voting by mail has become an increasingly prevalent way for U.S. citizens to vote.  In 2020, five states will conduct the November general election entirely by mail, Nat'l Conf. of State Legislatures, *All-Mail Elections: (aka Vote By Mail)* (Mar. 24, 2020), https://perma.cc/ZNH5-CE2R, and thirty other states will permit every eligible voter to vote by mail.  *See* National Vote at Home Institute, *Applying for a Mailed-out Ballot: A State-by-State Guide* 4 (updated March 2020) (NVAHI Guide), https://perma.cc/L9X8-SVC8. There are a number of other states which permit voting by mail only on the basis of specified excuses, but that apply that requirement to all voters.  *See id.*

Texas is one of a handful of jurisdictions that take a different approach.  In Texas, no-excuse vote-by-mail is available only to a voter who "is 65 years of age or older on election day."  TEX. ELEC. CODE § 82.003.  Otherwise, a voter without a statutorily specified excuse must cast his or her ballot in person.

"The United States is mired in a pandemic involving a virus"—COVID-19—"that can cause serious illness and sometimes death."  *Texas*

8

*Democratic Party v. Abbott*, 961 F.3d 389, 393 (5th Cir. 2020).  As of the end of June, the highest number of reported cases of COVID-19 in Texas are among 30 to 39-year-olds and 40 to 49-year-olds.  Texas Department of State Health Services, Texas Case Counts: COVID-19, https://txdshs.maps.arcgis.com/apps/opsdashboard/index (last accessed July 1, 2020).  It is unclear when the pandemic will abate, and whether this deadly spike of COVID-19 will continue during the period leading up to and containing Election Day.  Although the constitutional infirmity complained of here has endured for some time, these pandemic circumstances urgently press for a remedy now.

In March, the federal Centers for Disease Control and Prevention issued "Recommendations for Election Polling Locations" designed "to prevent spread of coronavirus disease 2019 (COVID-19)." https://perma.cc/A9G4-ATZ7.  It advised states to "[e]ncourage voters to use voting methods that minimize direct contact with other people and reduce crowd size at polling stations."  *Id.*  In particular, its first specific recommendation encouraged "mail-in methods of voting if allowed in the jurisdiction."  *Id.*

Also in March, Texas Governor Greg Abbott issued a proclamation declaring that holding a statewide runoff primary then set for May 26, 2020, "would cause the congregation of large gatherings of people in confined spaces and force numerous election workers to come into close proximity with others, thereby threatening the health and safety of many Texans and literally exposing them to risk of death due to COVID-19." Tex. Proclamation (Mar. 26, 2020), https://perma.cc/TN2S-KUR7. He therefore postponed that primary until July 14, 2020.

That risk has not disappeared, and in fact has grown worse: June 30 saw the highest reported number of new cases in the state, and the number of individuals hospitalized as a result of COVID-19 has grown by more than 50% in the preceding week alone. Alice Morris & Sue Ambrose, *Overwhelming Demand for COVID-19 Tests, Long Waits for Results Hamper Texas Efforts to Control Spread*, DALLAS MORNING NEWS, (June 30, 2020), https://www.dallasnews.com/news/politics/ 2020/06/30/overwhelming-demand-for-covid-19-tests-long-waits-for-results-hamper-texas-effort-to-control-spread/ (last accessed July 1, 2020).

On June 22, in light of the rising number of COVID-19 cases in the state, defendant Abbott encouraged all Texans to stay at home: "because the spread is so rampant right now, there's never a reason for you to have to leave your home." Patrick Svitek, *Gov. Greg Abbott Recommends Texans Stay Home as Coronavirus Cases Surge*, TEXAS TRIBUNE (June 23, 2020), https://www.texastribune.org/2020/06/23/texas-coronavirus-greg-abbott-home (last accessed July 1, 2020). And in a June 26 press release, defendant Abbott stated that "[e]very Texan has a responsibility to themselves and their loved ones to . . . stay home if they can." Office of the Texas Governor, *Governor Abbott Takes Executive Action To Contain Spread Of COVID-19,* https://gov.texas.gov/news/post/governor-abbott-takes-executive-action-to-contain-spread-of-covid-19 (last accessed July 1, 2020).

Nationally, as the spring election season has progressed, voters across the country have sought to vote by mail to avoid exposing themselves to COVID-19. In Wisconsin, for example, the number of voters who requested absentee ballots for the April 2020 primary was five times the number who had requested absentee ballots for the spring 2016 election. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct.

11

1205, 1207 (2020).  In Pennsylvania, the shift was even more dramatic: more than eighteen times as many voters sought to vote by mail as had done so four years earlier.  Rick Corasaniti, *What Pennsylvania's 'Dry Run' Election Could Reveal About November*, N.Y. TIMES (June 3, 2020), https://perma.cc/EVB8-8PB7.

As for voters who went to the polls to cast ballots in person, a National Bureau of Economic Research working paper found that in Wisconsin, "counties which had more in-person voting per voting location (all else equal) had a higher rate of positive COVID-19 tests" several weeks later "than counties with relatively fewer in-person voters."  Chad D. Cotti et al., *The Relationship Between In-Person Voting, Consolidated Polling Locations, and Absentee Voting on Covid-19: Evidence From the Wisconsin Primary* 13 (May 2020), http://www.nber.org/papers/w27187.  By contrast, the researchers found "a negative relationship between absentee voting and the rate of positive COVID-19 tests."  *Id.*

## II.    PROCEDURAL BACKGROUND

In March 2020, several plaintiffs, including some of the plaintiffs in this case, brought suit in state court, seeking a declaration that, as a matter of Texas law, any voters who considered themselves at risk of

12

contracting COVID-19 could vote by mail using Tex. Election Code § 82.002(a). That statute provides that a voter is eligible for a mail-in ballot "if the voter has a sickness or physical condition" that creates "a likelihood" that voting in person would "injur[e] the voter's health." *See In re State of Texas*, 2020 WL 2759629, at *7 (Tex. Sup. Ct. May 27, 2020) (recounting the state-court litigation).

Ultimately, in response to an original mandamus petition filed by the attorney general, the Texas Supreme Court held that "a lack of immunity to COVID-19 is not itself a 'physical condition' for being eligible to vote by mail within the meaning of § 82.002(a)." *Id.* at *10.

In the meantime, in the face of continuing ambiguity over whether Section 82.002 would permit voters who feared the health effects from voting in person during the pandemic to cast their votes by mail, plaintiffs filed this lawsuit in the United States District Court for the Western District of Texas raising claims only under federal law. Plaintiffs include three individual voters ranging in age from 20 to 60 who wish to cast mail-in ballots to avoid the health risks both to themselves and to others stemming from COVID-19, as well as the Texas Democratic Party and its chairman. The defendants included the

Governor, the Attorney General, and the Secretary of State as well as the county officials responsible for administering elections in Travis and Bexar Counties, where the individual plaintiffs live.

Two of plaintiffs' claims involved the Twenty-Sixth Amendment. They alleged that Texas's restriction of no-excuse mail-in voting to voters over the age of 65 was "unconstitutional as applied to these Plaintiffs during these pandemic circumstances" and "also facially unconstitutional." First Am. Compl. ¶¶ 101-102, *Texas Democratic Party v. Abbott*, Civ. Act. No. 5: 20-CV-00438-FB (W.D. Tex. Apr. 29, 2020), ECF 9.

After reviewing extensive evidence and holding a hearing, the District Court granted plaintiffs' motion for a preliminary injunction. ROA at 2066-67. The District Court held that plaintiffs were likely to succeed on their as-applied Twenty-Sixth Amendment claim. First, the District Court held that Section 82.003 "violate[s] the clear text of the Twenty-Sixth Amendment." *Id*. at 2064. It found that Section 82.003 entitles Texas voters over the age of 65 to vote by mail "on the account of their age alone," while voters "younger than 65 face a burden of not being able to access mail ballots on account of their age alone." *Id*. at 2112.

The court then explained the special burden this imposed "during the COVID-19 pandemic." *Id.* at 2113. Voters like plaintiffs "are forced" to "risk[] their health by voting in person." *Id.* By contrast, "[v]oters age 65 and older will not face the same burden on the right to vote because they are able to access mail ballots and vote from the safety of their home, away from potential COVID-19 carriers and spreaders." *Id.* at 2115.

The District Court further found, relying on circuit precedent, that denial of the right to vote by mail would inflict irreparable injury on plaintiffs. ROA at 2125. It emphasized that forcing younger voters "to unnecessarily risk their lives in order to practice their constitutional rights while allowing other [older] voters a preferred status so that they do not have to face this same burden" magnified the irreparable injury. *Id.* at 2126. As for the other two prongs of the standard for preliminary relief—the balance of the equities and the public interest—the court explained that "[n]o harm occurs when the State permits all registered, legal voters the right to vote by utilizing the existing, safe method that the State already allows for voters over the age of 65"; that expanding mail-in voting would impose "no undue burden" on election

administrators; and that it is "in the public interest" to prevent the State from violating the requirements of federal law. *Id*. at 2126-27.

To avoid the unconstitutional discrimination on the basis of age, the District Court declared that "[a]ny eligible Texas voter who seeks to vote by mail in order to avoid transmission of COVID-19 can apply for, receive, and cast an absentee ballot in upcoming elections during the pendency of pandemic circumstances." *Id*. at 2066. And it enjoined defendants from refusing to provide, accept, or tabulate such ballots. *Id*. at 2067.

Defendants Abbott, Paxton, and Hughs appealed. Without acting to expedite the appeal in any way, a motions panel of this Court stayed the preliminary injunction "pending further order of th[e] court." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 412 (5th Cir. 2020).

The motions panel rejected defendants' arguments that plaintiffs lacked standing and that their constitutional claims were either nonjusticiable or barred by sovereign immunity. *Id*. at 397-402. But it held that plaintiffs were not entitled to preliminary relief because they were unlikely to succeed on their Twenty-Sixth Amendment claim. *Id*. at 409.

On June 16, plaintiffs filed an application to the U.S. Supreme Court to vacate the motions panel's stay, as well as a petition for a writ of certiorari before judgment. Appl. to Vacate the Fifth Circuit's Stay of the Order Issued by the United States District Court for the Western District of Texas, No. 19A1055; Pet. for Writ of Cert. before Judgment, No. 19-1939.  On June 22, plaintiffs moved to expedite consideration of the petition for certiorari before judgment, so that the Supreme Court could issue its decision by October 5, 2020.  Motion to Expedite the Pet. for Writ of Cert. before Judgment, No. 19-1939.  In all of these papers, plaintiffs narrowed their arguments, from the numerous grounds on which the District Court found they were likely to succeed on the merits, to a single one: that Texas Election Code Section 82.003, which provides a right to vote by mail without any additional excuse—but only to voters who will be "65 years of age or older on election day," violates the Twenty-Sixth Amendment's prohibition on the denial or abridgment of the right to vote based on age.

On June 26, the Supreme Court denied plaintiffs' application to vacate the stay. *Texas Democratic Party v. Abbott*, 2020 WL 3478784 (U.S. June 26, 2020).  Along with that denial though, Justice Sotomayor

issued a statement noting that application raised "weighty but seemingly novel questions regarding the Twenty-Sixth Amendment," and expressing the hope that "the Court of Appeals will consider the merits of the legal issues in this case well in advance of the November election." *Id.* at *1. The Supreme Court subsequently denied the motion to expedite consideration of the petition for a writ of certiorari before judgment. *Texas Democratic Party v. Abbott*, 2020 WL 3579134 (U.S. July 2, 2020).

## SUMMARY OF THE ARGUMENT

The District Court's decision should be affirmed because the four requirements for a preliminary injunction have been met. Plaintiffs have demonstrated they are likely to succeed on the merits of their Twenty-Sixth Amendment claim. They also have shown that they would suffer irreparable injury absent the preliminary injunction, that the balance of hardships favors them, and that the public interest would be best served by plaintiffs' proposed injunction.

Defendants' other arguments on appeal as to why a preliminary injunction should not have issued are meritless. Sovereign immunity does not bar plaintiffs' claims, all plaintiffs easily meet the requirements for Article III standing, *Pullman* abstention is not properly invoked, and

the political question is inapplicable. For these reasons, the District Court's issuance of the preliminary injunction should be affirmed.

## ARGUMENT

### I.   Plaintiffs Are Likely to Succeed on the Merits because Texas Election Code Section 82.003 Violates the Twenty-Sixth Amendment

*A. Section 82.003 Violates the Twenty-Sixth Amendment's Prohibition of Differing Treatment in Voting on Account of Age*

Section 1 of the Twenty-Sixth Amendment contains a simple command: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by the United States or by any State on account of age." U.S. Const. amend XXVI, § 1. As explained below, this is a straightforward prohibition on differing treatment of voters on the basis of age.

"When seeking to discern the meaning of a word in the Constitution, there is no better dictionary than the rest of the Constitution itself." *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n,* 135 S. Ct. 2652, 2680 (2015) (Roberts, C.J., dissenting). The Twenty-Sixth Amendment "embodies the language and formulation of the 19th amendment, which enfranchised women, and

that of the 15th amendment, which forbade racial discrimination at the polls." S. Rep. No. 92-26, 92d Cong., 1st Sess. 2 (1971). And the Twenty-Fourth Amendment, which "clearly and literally bars any State from imposing a poll tax on the right to vote" in federal elections, contains an equivalent "express constitutional command[] that specifically bar[s] States from passing certain kinds of laws" regarding the right to vote. *Williams v. Rhodes*, 393 U.S. 23, 29 (1968). Thus, the Twenty-Sixth Amendment must be read *in pari materia* with these virtually identical constitutional provisions.

The words of the Twenty-Sixth Amendment echo the Fifteenth, Nineteenth, and Twenty-Fourth Amendments, which direct that the right to vote shall not be "denied or abridged" based on race, sex, or failure to pay a poll tax, and compel the same finding of unconstitutionality that would result if those preceding Amendments were offended in a similar manner. A state would plainly violate the Constitution if it offered no-excuse mail voting only to whites (which would violate the Fifteenth Amendment), only to men (which would violate the Nineteenth), or only to voters who pay a tax (which would violate the Twenty-Fourth). It is equally plain that Texas has violated

20

the Twenty-Sixth Amendment by offering the option of no-excuse vote by mail only to voters over 65. This reading of the Twenty-Sixth Amendment is in consonance with the interpretations of the Supreme Court of California, the Colorado Supreme Court, the First Circuit, and (in a decision issued just last week) the Seventh Circuit.[2]

Shortly after ratification of the Twenty-Sixth Amendment, the California Attorney General issued an opinion that "'for voting purposes the residence of an unmarried minor'"—in California, then a person under the age of 21—"will normally be his parents' home' regardless of where the minor's present or intended future habitation might be." *Jolicoeur v. Mihaly*, 488 P.2d 1, 3 (1971) (quoting 54 Adv. Ops. Cal. Atty Gen. 7, 12 (1971)). As a result of this guidance, registrars told six of the individual plaintiffs in *Jolicoeur* to register in the California jurisdictions where their parents lived, which were "up to 700 miles away from their

---

[2] Indeed, in his concurrence on the motions panel's decision to stay the injunction, Judge Ho recognized that the text of the Twenty-Sixth Amendment, which "forbids discrimination in voting" because of a citizen's age (once the citizen turns eighteen), "closely tracks the text" of the Fifteenth Amendment. *Texas Democratic Party v. Abbott*, 961 F.3d 389, 416 (5th Cir. 2020) (J. Ho, concurrence). And he acknowledged that it "would presumably run afoul of the Constitution to allow only voters of a particular race to vote by mail." *Id.*

claimed permanent residences," and told other individuals (whose parents lived in other states or abroad) that they could not register in California at all.  *Id*.

The California Supreme Court held that "treat[ing] minor citizens differently from adults for any purpose related to voting" violated the Twenty-Sixth Amendment.  *Id*. at 2.  The court pointed to the way the Twenty-Sixth Amendment mirrored the language of the "Twenty-Fourth, Nineteenth, and Fifteenth before it."  *Id*. at 4.  The court identified *Gray v. Johnson*, 234 F. Supp. 743 (S.D. Miss. 1964), as a case "significant for its interpretation of similar language in the Twenty-Fourth Amendment."  *Jolicoeur*, 488 P.2d at 4.  *Gray* had held that the "burden" of obtaining a special receipt put on voters who chose not to pay the Mississippi poll tax "circumscribe[d], impair[ed], and impede[d] the right to vote" secured by the Twenty-Fourth Amendment.

The California court then explained that so too "[c]ompelling young people who live apart from their parents to travel to their parents' district to register and vote or else to register and vote as absentees burdens their right to vote" as secured by the Twenty-Sixth Amendment.  *Id*.  That amendment, like its three predecessors, forbids "onerous procedural

requirements which effectively handicap exercise of the franchise," even if "the abstract right to vote" remains "unrestricted." *Id.* (quoting *Lane v. Wilson*, 307 U.S. 268, 275 (1939)). Thus, the California Supreme Court held that the Twenty-Sixth Amendment requires state officials "to treat all citizens 18 years of age or older alike for *all* purposes related to voting." *Id.* at 12 (emphasis added).

In a case involving age-based restrictions on participation in the initiative process, the Colorado Supreme Court similarly held that "the prohibition against denying the right to vote to anyone eighteen years or older by reason of age applies to the entire process involving the exercise of the ballot and its concomitants." *Colorado Project-Common Cause v. Anderson*, 495 P.2d 220, 223 (Colo. 1972).

In *Walgren v. Howes*, 482 F.2d 95 (1st Cir. 1973), the First Circuit addressed a college town's decision to hold municipal elections while the local university was in the midst of its winter break. With respect to the plaintiffs' Twenty-Sixth Amendment claim, the court declared that "the voting amendments would seem to have made the specially protected groups, at least for voting-related purposes, akin to a 'suspect class,'" entitled to heightened judicial scrutiny. *Id.* at 102.

23

The First Circuit further explained that if the burden on the right to vote were "of such a significant nature as to constitute an 'abridgement,'" a court "presumably would not take the additional step of considering the adequacy of governmental justification"; it would simply strike down the challenged practice. *Id* at 102. In subsequent proceedings, the First Circuit declared that it was "difficult to believe" that the Twenty-Sixth Amendment "contributes no added protection to that already offered by the Fourteenth Amendment," with respect to election practices, "particularly if a significant burden were found to have been intentionally imposed solely or with marked disproportion on the exercise of the franchise by the benefactors of that amendment." *Walgren v. Bd. of Selectmen of Town of Amherst*, 519 F.2d 1364, 1367 (1st Cir. 1975).

Most recently, the Seventh Circuit agreed that "arguments under the Twenty-Sixth Amendment (for age)" must be treated "the same as those under the Fifteenth Amendment (for race)." *Luft v. Evers*, 2020 WL 3496860, at *5 (7th Cir. June 29, 2020). Ultimately, that court held that the challenged Wisconsin restrictions, which were facially neutral, were not adopted *because of* the plaintiffs' age or race. *Id.* at *3. By contrast,

24

in this case, the plain text of statute makes clear that the Texas legislators who voted for Section 82.003 did not just "care about" age – they without doubt intended to draw a distinction based on it. Indeed, defendants readily admit that Texas adopted Section 82.003 *because* it treats to voters over the age of 65. *See, e.g.,* Opening Brief at 1 (referring to "the Legislature's policy choice" to allow only voters 65 and older no-excuse vote by mail ballots); *id.* at 13 (referring to "Texas's decision to limit mail-in voting").

Thus, *Luft* simply reemphasizes what *Jolicoeur*, *Anderson*, *Walgren*, and the language and formulation of the Twenty-Sixth Amendment make clear: expressly discriminatory treatment in voting on the basis of race, gender, payment of a poll tax, or age (*i.e.*, the distinctions upon which discrimination in voting is expressly prohibited by the Constitution) cannot withstand scrutiny.

>    B. *Section 82.003's Restriction of No-Excuse Vote by Mail Ballots Only to Citizens Over 65 "Abridges" Plaintiffs' Right to Vote*

An examination of the Supreme Court's construction of the Fifteenth and Twenty-Fourth Amendments further demonstrates how Section 82.003 constitutes an abridgment of plaintiffs' right to vote,

notwithstanding the fact that plaintiffs may still have the ability to vote in person.

In anticipation of the ratification of the Twenty-Fourth Amendment, Virginia enacted a provision, Section 24-17.2, that required a voter who wished to vote in federal elections either to pay the usual poll tax or to "file a certificate of residence in each election year." *Harman v. Forssenius*, 380 U.S. 528, 532 (1965). The Supreme Court held unanimously that that provision was "repugnant to the Twenty-fourth Amendment." *Id*. at 533. The justices acknowledged that Virginia could abolish its poll tax altogether and then require all voters to file the certificate of residence. *See id*. at 538. But requiring a voter who did not pay the poll tax to file the certificate nevertheless "constitute[d] an abridgment of the right to vote." *Id*.

The Court explained that it "need only be shown that Section 24-17.2 imposes a material requirement solely upon those who refuse to surrender their constitutional right to vote in federal elections without paying a poll tax." *Harman*, 380 U.S. at 541. The Court held that it did because Section 24-17.2 imposed "cumbersome" logistical burdens on

voters who declined to pay the poll tax that poll tax-paying voters did not face.  *See id.* at 541-42.

The Court in *Harman* also emphasized that Section 24-17.2 "would not be saved even if it could be said that [getting the certificate of residence]  is no more onerous, or even somewhat less onerous, than the poll tax."  *Id.* at 542.  "Any material requirement" based "solely" on declining to pay a poll tax "subverts the effectiveness of the Twenty-fourth Amendment and must fall under its ban."  *Id.* (emphasis added). So, too, in *Lane v. Wilson*, 307 U.S. 268 (1939), the Supreme Court emphasized that the Fifteenth Amendment bars "onerous procedural requirements which effectively handicap exercise of the franchise"—in that case, by black voters—"although the abstract right to vote may remain unrestricted as to race."  *Id.* at 275.

As in *Harman* and *Lane*, requiring under-65 voters to show up at the polls in person, particularly during the COVID-19 pandemic, while allowing over-65 voters to cast ballots from the safety of their homes imposes a "material requirement," *Harman*, 380 U.S. at 542, on younger voters that "effectively handicap[s]," *Lane*, 307 U.S. at 275, the exercise of the franchise.  Even this court's motions panel did not deny that

COVID-19 "increases the risks" citizens would face from in-person voting. *Texas Democratic Party v. Abbott*, 961 F.3d 389, 405 (5th Cir. 2020). Nor did it deny that it can be more "cumbersome," *Harman*, 380 U.S. at 541, to vote in person; that, after all, was precisely why the state extended no-excuse mail-in voting to seniors. *Texas Democratic Party v. Abbott*, 961 F.3d 389, 405 (5th Cir. 2020). But it wrongly thought that Texas's system was fine as long as it did not prevent younger voters "from voting by all other means." *Id.* at 404.

This conclusion of the motions panel can only be reached by ignoring the plain language of the Twenty-Sixth Amendment. That amendment, like the Fifteenth, Nineteenth, and Twenty-Fourth, does not prohibit states only from "absolutely prohibit[ing]" qualified citizens from voting. *Texas Democratic Party v. Abbott*, 961 F.3d 389, 403 (5th Cir. 2020). It prohibits abridging the right to vote as well. The concept of abridgement "necessarily entails a comparison." *Reno v. Bossier Par. Sch. Bd.*, 528 U.S. 320, 334 (2000). By comparison to the right to vote that Texas provides to citizens over the age of 65, the right it provides to younger voters is less robust. And it is less robust "solely," *Harman*, 380 U.S. at 542, because of the voters' age thereby subverting the

effectiveness of the Twenty-Sixth Amendment.   Any differential treatment of voters "on account of age" violates the plain language of the Twenty-Sixth Amendment.

The lesson for Texas's vote-by-mail scheme is straightforward. Texas could have decided not to extend no-excuse vote-by-mail to anyone, but it cannot grant that privilege based on age.   The State cannot "impose[] a material requirement" on voting—namely, showing up at a polling place—"solely" on the basis of an eligible voter's age.  *Harman*, 380 U.S. at 541.

### C. The Motions Panel's Reliance on McDonald in Analyzing Plaintiffs' Twenty-Sixth Amendment Claim Was Misplaced

Given this background, the motions panel's decision to rely entirely on *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969), was clearly misplaced.[3]  *McDonald* predates the passage of

---

[3] This Court is not bound by the motions panel's opinion.   An "oral argument panel is not bound by a motions panel's decision," *In re Grand Jury Subpoena*, 190 F.3d 375, 379 (5th Cir. 1999), because "a motions panel's decision is based on an abbreviated record and made without the benefit of full briefing by the parties, which may result in a less than thorough exploration of the issues." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999); *see also Democratic Exec. Comm. of Fla. v. Nat'l Republican Senatorial Comm.*, 950 F.3d 790, 795 (11th Cir. 2020)

the Twenty-Sixth Amendment and involves a Fourteenth Amendment Equal Protection Clause challenge, not a challenge grounded in the "denial or abridgment" of the right to vote based on race, gender, payment of poll tax, or age.

*McDonald* concerned Illinois's refusal to provide absentee ballots to Cook County voters who could not appear at the polls because they were in the county jail awaiting trial. In considering the plaintiffs' Fourteenth Amendment challenge, the Court held that "the distinctions made by Illinois' absentee provisions"—which permitted physically (but not "judicially") incapacitated voters and detainees incarcerated outside the county to receive absentee ballots—were subject to only rational basis review because they were "not drawn on the basis of" a factor like race that "demand[s] a more exacting judicial scrutiny." *Id*. at 807. And the decision to limit absentee voting to a few categories of individuals survived that deferential level of scrutiny.

In wholly adopting the logic of *McDonald* as applicable to this case, the motions panel declared that "[i]f a state's decision to give mail-in

---

(holding that a "stay-panel opinion *cannot* spawn binding legal consequences regarding the merits of the case") (emphasis in original).

ballots only to some voters does not normally implicate an equal-protection right to vote, then neither does it implicate '[t]he right . . . to vote' of the Twenty-Sixth Amendment. There is no reason to treat the latter differently." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 409 (5th Cir. 2020) (internal citation of *McDonald* omitted).  Because "age is not a suspect class" under the Equal Protection Clause, *id*. at 405, it was permissible for Texas to treat older voters more favorably.  "The Constitution is not 'offended simply because some' groups 'find voting more convenient than' do the plaintiffs because of a state's mail-in ballot rules. That is true even where voting in person 'may be extremely difficult, if not practically impossible,' because of circumstances beyond the state's control, such as the presence of the Virus."  *Id*. (quoting *McDonald*, 394 U.S. at 810).

But defendants' and the motions panel's reliance on *McDonald* could only make sense in the context of a Fourteenth Amendment claim of a right to vote by mail, or if their claims involved discrimination in voting based on distinctions other than those of race, gender, payment of a poll tax, or age (in other words, distinctions which are only cognizable under general Fourteenth Amendment equal protection jurisprudence

because they do not implicate the specific protections on voting set forth in the Fifteenth, Nineteenth, Twenty-Fourth, and Twenty-Sixth Amendments).

But as plaintiffs have already explained, their Twenty-Sixth Amendment claim challenges their differential treatment in voting based on age; they do not claim that they have been deprived of some inherent right to vote by mail.   Moreover, they base their Twenty-Sixth Amendment claim on a form of discrimination in voting expressly prohibited by the Constitution.   Thus, once plaintiffs' claim is properly conceived, it is clear that *McDonald*, a case which turned in no small part on whether voting by mail itself has some constitutional significance, has little relevance in this case.

The motions panel may have been descriptively accurate in saying that the Twenty-Sixth Amendment is "not a major player in federal litigation," *Texas Democratic Party v. Abbott*, 961 F.3d 389, 408 (5th Cir. 2020), a point highlighted by Justice Sotomayor in her statement that this case "weighty but seemingly novel questions regarding the Twenty-Sixth Amendment." *Texas Democratic Party v. Abbott*, No. 19A1055, 2020 WL 3478784, at *1 (U.S. June 26, 2020).   But that provides no

warrant for courts to ignore that provision when it bears directly on a case before them.

### D. The District Court Correctly Required Defendants to Remedy the Violation of Plaintiffs' Constitutional Right by Allowing Them to Vote by Mail

The District Court, having found that Section 82.003 violated *inter alia* the Twenty-Sixth Amendment, was correct in remedying that violation by requiring Texas to provide vote by mail ballots to all voters.

As an initial matter, it is not clear that Texas could level down—at least for the upcoming 2020 general election which is covered by the District Court's Order. Voters over the age of 65 (or meeting one of the other non-age based triggers) are entitled to file an "annual" application for mail-in ballots which provides them with such ballots for every election in a calendar year. *See* Application for Ballot by Mail, https://perma.cc/9CZD-G52E. Absent legislative action, those voters will automatically receive such ballots, which means that the only way to eliminate the age-based discrimination is to enable voters under 65 to obtain mail-in ballots as well.

Moreover, while defendants suggest that the "district court should have eliminated the supposedly unconstitutional exception to allow those

over 65 to vote by mail" (Opening Brief at 39-40), they did not present argument or evidence in the District Court that Texas would choose to cure the constitutional violation by leveling down. And for good reason: the political blowback elected officials could expect from a voting bloc that participates at a high rate is a powerful deterrent. And Texas could not, of course, eliminate absentee voting altogether because the Uniformed and Overseas Citizens Absentee Voting Act of 1986 as amended, 52 U.S.C. § 20301 *et seq.*, requires states to provide absentee ballots to certain voters for federal elections.

Moreover, defendants have pointed to nothing to support their insinuation that the Texas Legislature would choose to deprive voters over the age of 65 of the right to vote by mail they have enjoyed for decades, rather than extend that right on a nondiscriminatory basis during the COVID-19 pandemic (which is the only period relevant for the preliminary injunction now before this Court).[4]

---

[4] Defendants' suggestion that the District Court was wrong and there should be leveling down rather than leveling up is all the more reason why this appeal should be decided expeditiously, so that the Legislature has the opportunity to make the leveling decision in advance of the November general election.

Finally, the Supreme Court in *Guinn v. United States*, 238 U.S. 347 (1915)—a Fifteenth Amendment case—suggested that one "consequence of the striking down of a discrimination clause" is that "a right of suffrage would be enjoyed by reason of the generic character of the provision which would remain after the discrimination was stricken out." *Id*. at 363. Striking the words "if the voter is 65 years of age or older on election day" from Section 82.003 would level up and create a right to vote by mail for any "eligible voter." *See Barr v. American Assn. of Political Consultants, Inc.,* --- S.Ct. ---, 2020 WL 3633780 at *12 (U.S. July 6, 2020) ("When the constitutional violation is unequal treatment, as it is here, a court theoretically can cure that unequal treatment either by extending the benefits or burdens to the exempted class, or by nullifying the benefits or burdens for all.")

## II.  The District Court Correctly Determined that the Other Preliminary Injunction Factors Were Satisfied

### A. The District Court Was Correct that a Substantial Threat of Irreparable Harm Would Exist if the Injunction Did Not Issue

The District Court correctly held that a substantial threat of irreparable harm would exist if the injunction plaintiffs sought was not entered. ROA at 2066. On appeal, defendants argue that the District

Court erred in finding that irreparable harm would exist absent an injunction because it failed consider plaintiffs' "harm 'in light of' the numerous steps the State has taken to make in-person voting safer." Opening Brief at 47. Defendants' argument does not withstand scrutiny, however, because they misunderstand the nature of the relevant harm that plaintiffs would suffer.

While it is disturbingly clear that defendants' conduct could cause serious injury or even death to plaintiffs and millions of other Texans (and such harm would be irreparable), the irreparable harm relevant to the District Court's injunction is the harm to plaintiffs' constitutional rights. "When constitutional rights are threatened or impaired, irreparable injury is presumed," and "a restriction on the fundamental right to vote therefore constitutes irreparable injury." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (finding that plaintiffs "would certainly suffer irreparable harm if their right to vote were impinged upon"). As explained above, defendants' conduct in denying absentee ballots "on account of age" unconstitutionally abridges plaintiffs' right to vote, and

thus irreparable harm should be presumed (and, in any event, is clearly present).

### B. The District Court's Finding that the Threatened Injury Absent an Injunction Outweighed any Harm that Would Result if the Injunction Was Granted Was Correct

The District Court's holding that the threatened injury to plaintiffs outweighed any resulting to defendants from an injunction (ROA at 2066) was correct. Defendants argue that they will be irreparably harmed because the District Court's injunction "inflicts an institutional injury from the inversion . . . of federalism principles" and because any "time a State is enjoined from effectuating statutes . . . , it suffers a form of irreparable injury." Opening Brief at 47. But those harms "are unavailing as compared to the plaintiffs' interest in their opportunity to exercise the core democratic right of voting." *See Jones v. Governor of Fla.*, 950 F.3d 795, 829 (11th Cir. 2020); *see also United States v. Georgia*, 892 F. Supp. 2d 1367, 1377 (N.D. Ga. 2012) (holding that state's failure to comply with federal law governing overseas vote-by-mail ballots "jeopardize[d] the fundamental right to vote" and that the "potential hardships that Georgia might experience are minor when balanced against the right to vote, a right that is essential to an effective

democracy"). Moreover, as the Eleventh Circuit made clear in *Jones*, merely claiming "a weighty interest in upholding its statutes" is "too high an order of abstraction to be persuasive." *Id.* If it were otherwise, a "broad interest in enforcing its statutes, standing alone, would be applicable any time a statute's constitutionality is challenged and a preliminary injunction issued against its enforcement," and "would prove too much—hardly any preliminary injunction could ever issue." *Id.*

Here, plaintiffs' fundamental right to vote is being unconstitutionally abridged by defendants. Any supposed harm suffered by defendants (based on their conclusory invocations of federalism and need to enforce the law) is outweighed by the real, articulable harm to plaintiffs. Were it otherwise, it would be difficult to conceive of any unconstitutional state statute which could be properly enjoined.

### C. The District Court Correctly Held that the Public Interest Would Be Best Served by Protecting the Rights of the Public rather than the Opinions of State Actors

The District Court correctly determined that the public interest in this case would best be served by protecting the constitutional rights of Texas voters. An injunction which provides for the "cautious protection of the Plaintiffs' franchise-related rights is without question in the public

interest." *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005); *see also Obama for Am. v. Husted*, 697 F.3d 423, 436–37 (6th Cir. 2012) (holding that "[t]he public interest therefore favors permitting as many qualified voters to vote as possible" because the public has a "strong interest in exercising the 'fundamental political right' to vote," and that "interest is best served by favoring enfranchisement") (quoting *Purcell v. Gonzales*, 549 U.S. 1, 4 (2006)). In this case, the District Court correctly held that the protection of plaintiffs' fundamental right to vote through an injunction best served the public interest.

## III.   **Sovereign Immunity Does Not Bar Plaintiffs' Claims**

Sovereign immunity does not bar plaintiffs' claims because defendants have a sufficient connection to the enforcement of Section 82.003, such that *Ex parte Young* applies in this case.[5]

---

[5] Defendants are wrong that sovereign immunity applies to bar plaintiffs' claims against them. However, if this Court were to find that sovereign immunity barred plaintiffs' claims and defendants Abbott, Paxton, and Hughs were dismissed from the case, the District Court's injunction would bind and be in effect against defendants DeBeauvior and Callanen (who did not appeal the District Court's injunction and who do not dispute that they are proper defendants). *See Cabral v. City of Evansville, Ind.*, 759 F.3d 639, 643 (7th Cir. 2014) ("[A] judgment will not be altered on appeal in favor of a party who did not appeal [even

*Ex parte Young* provides an exception to sovereign immunity when a defendant enforces the challenged statute "by virtue of his office." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). *Ex parte Young* requires two analyses: first, a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," and second, consideration of whether the official in question "has a 'sufficient connection [to] the enforcement' of the challenged act." *Id.* The Complaint in this case alleges, *inter alia*, a Twenty-Sixth Amendment violation and seeks prospective relief, and, as explained below, all defendants have a sufficient connection to the enforcement of the Texas Election Code.

As to Defendant Hughs, this Court has already determined that "[t]he facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the State itself and its Secretary of State, who serves as the 'chief election officer of the state.'" *OCA-Greater Houston v. Texas*, 867 F. 3d 604, 613 (5th Cir. 2017). In that case, the court found that because the Secretary of State is Texas's Chief Election

---

if] the interests of the party not appealing are aligned with those of the appellant.").

40

Officer and is required to "obtain and maintain uniformity in the application, operation, and interpretation of" the Texas Election Code, TEX. ELEC. CODE § 31.003, the Secretary was positioned to redress the plaintiffs' injuries caused by a generally applicable election law. *Id.*; *see also United States v. Texas*, 422 F. Supp. 917, 921 (S.D. Tex. 1976) (rejecting motion to dismiss in case regarding Texas election law by Texas Secretary of State due to Secretary's position as chief elections officer and duty to maintain uniformity in application, operation, and interpretation of election laws). And the motions panel stated that "our precedent suggests that the Secretary of State bears a sufficient connection to the enforcement of the Texas Election Code's vote-by-mail provisions to support standing," and "[t]hat, in turn, suggests that *Young* is satisfied as to the Secretary of State." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020).

Defendants construe the *Ex parte Young* doctrine too narrowly. Opening Brief at 16-19. As the Fifth Circuit has made clear, *Ex parte Young* merely requires "some scintilla of 'enforcement' by the relevant state official with respect to the challenged law." *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019); *see also Fusilier v. Landry*, --- F.3d --

41

-, 2020 WL 3496856, at *2 (5th Cir. June 29, 2020) (rejecting attorney general's "novel position in voting rights litigation" that plaintiffs lacked standing to sue to him and that sovereign immunity barred their claims). Here, Defendant Hughs holds clearly defined responsibilities relating to Texas Election Code § 82.001-4's implementation.  *See* TEX. ELEC. CODE § 31.003 ("The secretary of state shall obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code").

Defendant Paxton also has no immunity under the *Ex parte Young* doctrine, as he enforces state law (including those relating to elections). Indeed, in cases before the federal courts of Texas, "the State [has] concede[d] that the attorney general has the duty to enforce and uphold the laws of Texas." *City of Austin v. Abbott*, 385 F. Supp. 3d 537, 545 (W.D. Tex. 2019); *see also Texas Democratic Party v. Abbott*, 961 F.3d 389, 401 (5th Cir. 2020) (pointing out that defendants acknowledge that defendant Paxton "has concurrent jurisdiction with local prosecutors to prosecute election fraud").

Finally, because defendant Abbott undoubtedly "would be important to any remedial process this Court may order," he is a proper

defendant as well. *See Terrebonne Par. NAACP v. Jindal*, 154 F. Supp. 3d 354, 362 (M.D. La. 2015) (finding that the governor and attorney general were proper defendants because "[b]ased on their powers and duties, [they] . . . will be instrumental in devising and enforcing a remedy that this Court may potentially order"). Moreover, it is undisputed that the Governor has broad powers related to the enforcement of the Texas Election Code (which he may very well use again in the future), including the power to postpone elections, to expand the period for early voting, and to cause election workers to issue guidance on social distancing and other precautionary measures. *See Texas Democratic Party v. Abbott*, 961 F.3d 389, 394 (5th Cir. 2020) (reviewing the actions the defendant Abbott has taken in light of COVID-19).

The motions panel did not find this to be a "relevant enforcement role," however, because these actions were exercises of his emergency powers, not express powers under the Texas Election Code. *Id*. at 400. But *Ex parte Young* inquires only into whether the defendant has "some connection with the enforcement of the act," 209 U.S. 123 at 157, not through what type of power that enforcement is undertaken. *See In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 373 (2d Cir. 2005)

(holding that "[s]o long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act").

Finally, Defendants seek to limit *Ex parte Young*'s applicability to situations not involving "affirmative action." Opening Brief at 17. But no such distinction exists in the law. Rather, under *Ex parte Young*, "a federal court . . . may enjoin state officials to conform their future conduct to the requirements of federal law," *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004), because "[a]n injunction to prevent him from doing that which he has no legal right to do is not an interference with the discretion of an officer." *Ex parte Young*, 209 U.S. at 159. In this case, the District Court's injunction did exactly that.

## IV.  The District Court's Holding that All Plaintiffs Have Standing to Bring their Claims Should Be Affirmed

The District Court correctly held that all plaintiffs meet the requirements for Article III standing, ROA at 2066, as each has suffered and will continue to suffer legally cognizable injuries because of Defendants' actions.

To establish Article III standing, a plaintiff must show (1) an "injury in fact" that is concrete, particularized, and actual or imminent; (2) that the injury is "fairly traceable" to the challenged conduct of the

defendant; and (3) that it is likely that the injury can be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. Because plaintiffs seek injunctive relief, only one party need have Article III standing for the case to proceed. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *Texas v. United States*, 945 F.3d 355, 377–78 (5th Cir. 2019).

In this case, plaintiffs have an actual, concrete, and particularized injury in fact (*i.e.*, their right to vote is abridged when they, but not older voters, are forced to vote in person and, among other things, thereby expose themselves to an increased risk of contracting or spreading COVID-19). That injury is fairly traceable to defendants' conduct (*i.e.*, their enforcement of the unconstitutional Section 82.003), and the injury is likely to redressed by a favorable decision (*i.e.*, an injunction requiring nondiscriminatory access to vote by mail).

While defendants do not dispute that plaintiffs have suffered a cognizable injury in fact or that their injury is redressable, defendants misunderstand the nature of plaintiffs' injury and, based on that misunderstanding, argue that their injury is not traceable to defendants' conduct. In their Opening Brief, defendants wrongly assert that "the

gravamen of Plaintiffs' complaint is that COVID-19 may harm them" and that "harms caused by a virus cannot be charged to Defendants for standing purposes because constitutional claims 'require state action.'" *Id.* at 20; *see also id.* at 13 ("Any additional burdens imposed by COVID-19 cannot establish a constitutional claim because they not chargeable to the State."); *id.* at 34 ("The real problem here is COVID-19, which all but the craziest conspiracy theorists would concede is not the result of any act or failure to act by the Government.").

But, as explained herein, the cognizable harm to plaintiffs in this case is the requirement that, because of their age, they must vote in person rather than by mail. It goes without saying (or should anyway) that COVID-19 does not seek to enforce an unconstitutional statute which abridges plaintiffs' right to vote on the basis of age – it is defendants (the Governor, Attorney General, and Secretary of State) who seek to do so. Article 3's "fairly traceable" requirement merely requires "but for" causation, a standard which is easily satisfied here. See *In re Cao*, 619 F.3d 410, 421 (5th Cir. 2010) (finding Article III's "fairly traceable" causal link met on the basis of "but for" causation because the

government's implementation of the statute in question limited the plaintiffs' constitutional rights).

Defendants' challenges to TDP's associational and organizational standing (Opening Brief at 21-23) similarly fail.[6]    According to defendants, TDP does not have associational standing because there was "no evidence in the record showing that a specific member" had been harmed. *Id.* at 21.  This argument has no merit.

Associational standing allows an organization to bring suit when: "(1) the association's members [or constituency] would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *TDP v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).   The District Court correctly

---

[6] In any event, because there are individual plaintiffs with standing and "the remedy requested are changes in policies or regulations, the lack of standing" for the Democratic Party "would not have any significant effect on any relief granted in this case." *See Ostrom v. O'Hare*, 160 F. Supp. 2d 486, 492 (E.D.N.Y. 2001) (finding in any event that a political party had associational standing to challenge the constitutionality of state election statutes).

determined that TDP had met this test on behalf of both voters who intend to support Democratic candidates for offices across Texas in the 2020 general election, and also on behalf of the candidates TDP has endorsed and support.  ROA at 2106, 2110.  Indeed, the Fifth Circuit has specifically held in *Benkiser* that TDP has associational standing in these kinds of cases.  459 F.3d at 587-88; *see also Texas v. United States*, 945 F.3d 355, 380 (5th Cir. 2019), *as revised* (Jan. 9, 2020), *cert. granted sub nom. California v. Texas*, 140 S. Ct. 1262 (2020) (citing *Benkiser* approvingly for the proposition that "a political party would suffer an injury in fact because it would need to 'expend additional funds' in order to comply with the challenged regulation").

Faced with this precedent, defendants inexplicably contend that TDP does not have associational standing because it has failed to identify any injured members (Opening Brief at 21), despite the fact that three of the individual plaintiffs are members of the Democratic Party and are under 65.  ROA at 2102-04.  Even if they were not, however, there is no requirement that a plaintiff must name the individuals on whose behalf they assert associational standing.  *See Hancock Cty. Bd. of Supervisors v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) ("We are aware of no

precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on lack of associational standing."); *Democratic Party of Georgia, Inc. v. Crittenden*, 347 F. Supp. 3d 1324, 1337 (N.D. Ga. 2018) ("Given that the Democratic Party has tens of thousands of members who are active voters in the state, it is extremely unlikely that the rejection of absentee ballots . . . will not affect a single Democratic Party member.").

TDP similarly have organizational standing in this case. The Supreme Court has long recognized that a direct organizational injury is cognizable in two ways: (1) a diversion of organizational resources to identify or counteract the allegedly unlawful action, or (2) frustration of the organization's mission. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). And the Fifth Circuit has affirmed that "an organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to provide its 'activities—with the consequent drain on the organization's resources.'" *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010)

(quoting *Havens Realty Corp.*, 455 U.S. at 379); *see also Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008) (finding that the fact that "the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury," and holding that the Democratic Party had standing to assert the rights of its members).

Defendants concede that TDP offered evidence of injury through a declaration submitted by its Primary Director, in which he declared that defendants' conduct "caused TDP to divert millions of dollars in resources and wholly disrupted TDP's activities." Opening Brief at 22. And in issuing the preliminary injunction, the District Court correctly credited the uncontroverted evidence that plaintiffs submitted that they had to "divert resources to counteract those illegal actions, such as by educating voters on their ability to access absentee ballots." ROA at 2110.

## V. *Pullman* Abstention Should Not Be Exercised in this Case

Contrary to defendants' contentions (Opening Brief at 23), the District Court was never required to abstain with respect to plaintiffs' Twenty-Sixth Amendment claim, even if abstention might have been appropriate with regard to claims that were inextricably intertwined

with Section 82.002, which was subject to state-court proceedings. With respect to the Twenty-Sixth Amendment claim, the state law determination would have neither mooted nor presented in a different posture the federal constitutional questions raised by plaintiffs.

"[A]bstention is the exception rather than the rule," *Duncan v. Poythress*, 657 F.2d 691, 697 (5th Cir. 1981), because it is the "duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959) (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976)); *see also Louisiana Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1491 (5th Cir. 1995) ("*Pullman* abstention is generally inappropriate where . . . fundamental rights are at issue."). Abstention is only appropriate where there is a pending case in state court, the resolution of which will be dispositive of the case in federal court or will materially alter the constitutional questions presented in federal court. *See Siegel v. LePore*, 234 F.3d 1163, 1174 (11th Cir. 2000). The claims brought by some of the same plaintiffs in state court would have done neither.

As an initial matter, the claims in the state court proceeding would have not been dispositive of the claims in this case. Vindication of the plaintiffs' claims in state court would have allowed only some Texas voters under the age of 65 (*i.e.*, those "without established immunity" to COVID-19) to vote by mail only for a limited period of time (*i.e.*, during "elections affected by the COVID-19 pandemic"). *In re State*, No. 20-0394, 2020 WL 2759629, at *2 (Tex. May 27, 2020). And there can be no argument that the outcome of the state court proceeding, which was limited to the interpretation of Texas statutory law, could alter the constitutional questions presented in federal court (much less materially so).

In any event, defendants' abstention argument is now moot, because the Texas Supreme Court has decided the disputed question of Texas law. *In re State*, No. 20-0394, 2020 WL 2759629, at *10 (Tex. May 27, 2020). In fact, the Texas Supreme Court's decision, which makes clear that voters under 65 will receive no relief under state statutory and constitutional law, makes plaintiffs' Twenty-Sixth Amendment more, not less, appropriate for resolution.

Defendants' final effort to apply a doctrine which is clearly inapplicable here is to argue that the "district court lacked jurisdiction to enter its preliminary injunction" because "*Pullman* required the district court to abstain." Opening Brief at 23. But the Supreme Court has "on several occasions explicitly recognized that abstention does not, of course, involve the abdication of federal jurisdiction, but only the postponement of its exercise." *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 416 (1964); *see also Thompson v. Hous. Auth. of New Orleans*, 689 F. App'x 324, 327 (5th Cir. 2017) ("When Pullman abstention is appropriate, the district court should usually retain jurisdiction over the entire case.").

## VI.   <u>The Political Question Doctrine Is Inapplicable Here</u>

Finally, defendants also wrongly assert that plaintiffs' claims should be barred because they present a "nonjusticiable political question." Opening Brief at 34. Far from presenting a "quintessentially political question" (*id.*), plaintiffs' claims involve a straightforward constitutional claim that can be resolved with judicially discoverable and manageable standards for resolving the case. *See Saldano v. O'Connell*, 322 F.3d 365, 369 (5th Cir. 2003) (the political question doctrine only

applies if a court "will lack judicially discoverable and manageable standards" for resolving the case.).  As the Supreme Court held in *Elrod v. Burns*, 427 U.S. 347 (1976), "[t]hat matters related to a State's . . . elective process are implicated by this Court's resolution of a question is not sufficient to justify our withholding decision of the question." *Id.* at 351-52.

Indeed, the motions panel agreed that the political question doctrine is applicable in this case.  To "resolve this appeal, we need not— and will not—consider the prudence of Texas's plans for combating the Virus when holding elections," but "only whether the challenged provisions of the Texas Election Code run afoul of the Constitution." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 398-99 (5th Cir. 2020). "The standards for resolving such claims are familiar and manageable, and federal courts routinely entertain suits to vindicate voting rights." *Id.* at 399.

## **CONCLUSION**

For the reasons herein, the District Court's issuance of a preliminary injunction should be affirmed.

July 7, 2020                          Respectfully submitted,

                                      TEXAS DEMOCRATIC PARTY

                                      By:   /s/ Chad W. Dunn
                                      Chad W. Dunn
                                      State Bar No. 24036507
                                      Brazil & Dunn, LLP
                                      4407 Bee Caves Road, Suite 111
                                      Austin, Texas 78746
                                      Telephone: (512) 717-9822
                                      Facsimile: (512) 515-9355
                                      chad@brazilanddunn.com

                                      K. Scott Brazil
                                      State Bar No. 02934050
                                      Brazil & Dunn, LLP
                                      13231 Champion Forest Drive, Suite 406
                                      Houston, Texas 77069
                                      Telephone: (281) 580-6310
                                      Facsimile: (281) 580-6362
                                      scott@brazilanddunn.com

                                      Dicky Grigg
                                      State Bar No. 08487500
                                      Law Office of Dicky Grigg, P.C.
                                      4407 Bee Caves Road, Suite 111
                                      Austin, Texas 78746
                                      Telephone: 512-474-6061
                                      Facsimile: 512-582-8560
                                      dicky@grigg-law.com

                                      Martin Golando
                                      The Law Office of Martin Golando, PLLC
                                      SBN #: 24059153
                                      N. Saint Mary's, Ste. 700
                                      San Antonio, Texas 78205
                                      (210) 892-8543

martin.golando@gmail.com

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

/s/ Chad W. Dunn
Chad W. Dunn

*Counsel for Appellees*

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I certify that (1) the required privacy redactions have been made, 5th. Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

I will mail the correct number of paper copies of the foregoing document to the Clerk of the Court when requested.

/s/ Chad W. Dunn
Chad W. Dunn

*Counsel for Appellees*

# CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 10,253 words, excluding the parts exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used to calculate the word count).

/s/ Chad W. Dunn
Chad W. Dunn

*Counsel for Appellees*