# Exhibit A

No. 20-50407

IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

TEXAS DEMOCRATIC PARTY; GILBERTO HINOJOSA; JOSEPH DANIEL CASCINO; SHANDA MARIE SANSING; BRENDA LI GARCIA,

*Plaintiffs-Appellees,*

*V.*

GREG ABBOTT, GOVERNOR OF THE STATE OF TEXAS; RUTH HUGHS, TEXAS SECRETARY OF STATE; KEN PAXTON, TEXAS ATTORNEY GENERAL,

*Defendants-Appellants.*

On Appeal from the United States District Court for the Western District of Texas, San Antonio Division
No. 5:20-cv-00438-FB

**BRIEF OF *AMICUS CURIAE* NATIONAL REDISTRICTING FOUNDATION IN SUPPORT OF PLAINTIFFS-APPELLEES**

Marc E. Elias
Elisabeth C. Frost*
Jacki Anderson
John M. Geise*
Stephanie Command*
PERKINS COIE LLP
700 Thirteenth Street, N.W.,
Suite 600
Washington, D.C. 20005
(202) 434-1609
*Counsel for Amicus Curiae*
*Applications for admission forthcoming

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 29.2, I hereby certify that I am aware of no persons or entities, in addition to those listed in the party briefs, that have a financial interest in the outcome of this litigation. In addition, I hereby certify that I am aware of no persons with any interest in the outcome of this litigation other than the signatories to this brief and their counsel, and those identified in the other briefs filed in this case.

Dated: July 28, 2020                          /s/ *Jacki Anderson*
                                              Jacki Anderson
                                              *Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32.

1.    This brief complies with the type-word limit of Fed. R. App. P. 29(a)(5) and 32 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,798 words.

2.    This brief complies with the requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

Dated: July 28, 2020                              /s/ *Jacki Anderson*

                                                                  Jacki Anderson
                                                                  *Counsel for National Redistricting*
                                                                  *Foundation*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* states that it is not a publicly held corporation, it does not issue stock, and it does not have a parent corporation.

# TABLE OF CONTENTS

INTEREST of *AMICUS CURIAE* ............................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................2

   I.   The Twenty-Sixth Amendment broadly protects against denial or abridgement of the right to vote on account of age. .............................................5

   II.   The Twenty-Sixth Amendment provides greater protections against age-based discrimination in voting than the Fourteenth Amendment, including to flatly prohibit facial discrimination in voting on account of age. ....................13

   III.   Section 82.003 is unconstitutional because it facially discriminates in voting on the basis of age. ................................................................................18

   IV.   The appropriate remedy is to hold that, because Texas has chosen to offer "no excuse" mail voting to voters of a certain age, it must permit all voters over 18 to access the franchise in this way..............................................................22

CONCLUSION ....................................................................................................26

# TABLE OF AUTHORITIES

CASES                                                                     PAGE(S)

*Atl. Cleaners & Dyers v. United States*,
    286 U.S. 427 (1932) ................................................................................ 14

*Ayotte v. Planned Parenthood of N. New Eng.*,
    546 U.S. 320 (2006) ................................................................................ 23

*Colo. Project-Common Cause v. Anderson*,
    178 Colo. 1 (1972) .................................................................................. 16

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
    561 U.S. 477 (2010) ................................................................................ 23

*Gloria v. Hughs*,
    No. 5:20-cv-00527-OLG ..................................................................... 1, 2

*Heckler v. Mathews*,
    465 U.S. 728 (1984) ................................................................................ 25

*Jolicoeur v. Mihaly*,
    5 Cal. 3d 565 (1971) ........................................................................ passim

*League of Women Voters of Fla. v. Detzner*,
    314 F. Supp. 3d 1205 (N.D. Fla. 2018) ........................................... 15, 20

*Loving v. Virginia*,
    388 U.S. 1 (1967) .................................................................................... 21

*Luft v. Evers*,
    963 F.3d 665 (7th Cir. 2020) ................................................................. 15

*McDonald v. Bd. of Election Comm'rs of Chicago*,
    394 U.S. 802 (1962) ..................................................................... 6, 17, 18

*Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011) ................................................................. 23

*Nixon v. Herndon*,
    273 U.S. 536 (1927) ................................................................................ 21

*Ownby v. Dies*,
   337 F. Supp. 38 (E.D. Tex. 1971)...............................................................17, 20

*Prejean v. Foster*,
   227 F.3d 504 (5th Cir. 2000) ...............................................................22

*Quick v. City of Austin*,
   7 S.W.3d 109 (Tex. 1999)...................................................................24

*Sessions v. Morales-Santana*,
   137 S. Ct. 1678 (2017)......................................................................25

*Shaw v. Reno*,
   509 U.S. 630 (1993)..........................................................................21

*Shelby Cty. Ala. v. Holder*,
   570 U.S. 529 (2013)............................................................................8

*Smith v. Allwright*,
   321 U.S. 649 (1944)..........................................................................25

*South Carolina v. Katzenbach*,
   383 U.S. 301 (1966)........................................................................7, 8

*Strauder v. Virginia*,
   100 U.S. 303 (1880)..........................................................................21

*Symm v. United States*,
   439 U.S. 1105 (1979)........................................................................16

*Texas Democratic Party v. Abbott*,
   961 F.3d 389 (5th Cir. 2020) ....................................................passim

*United States v. Texas*,
   445 F. Supp. 1245 (S.D. Tex. 1978).................................16, 17, 20

*Walgren v. Bd. of Selectmen of Town of Amherst*,
   519 F.2d 1364 (1st Cir. 1975)...........................................................21

*Walgren v. Howes*,
   482 F.2d 95 (1st Cir. 1973)..............................................................12

*Worden v. Mercer Cnty. Bd. of Elections*,
   61 N.J. 325 (1972) .................................................................................12, 15, 20

**STATUTES**

Voting Rights Act, 42 U.S.C. § 1973 et seq. ....................................................7, 8, 9

Pub. L. No. 91-285, sec. 6, § 302....................................................................9

Code Construction Act, Section 311.032 of the Texas Government
   Code ..................................................................................................23

Tex. Elec. Code §§ 82.001-82.002, 82.004 ............................................19

Texas Election Code § 82.003 ...........................................................passim

Texas Government Code Section 311.032(c) ........................................24

**CONSTITUIONAL AND LEGISLATIVE AUTHORITIES**

117 Cong. Rec. H1821 (daily ed. March 23, 1971)...................................10

117 Cong. Rec. H1822....................................................................11

117 Cong. Rec. H1826-1827 ...........................................................11

S. Rep. No. 92-26 (1971) ............................................................11, 12

U.S. Const. amend. VI ....................................................................5

U.S. Const. amend. XIV ...........................................................passim

U.S. Const. amend. XV, § 1.............................................................3, 6

U.S. Const. amend. XV, § 2.........................................................7, 11, 15

U.S. Const. amend. XIX ................................................................11

U.S. Const. amend. XXVI, § 1 .....................................................passim

U.S. Const. amend. XXVI § 2 ...........................................................7

**OTHER AUTHORITIES**

Eric S. Fish, *The Twenty-Sixth Amendment Enforcement Power,* 121
    YALE L.J. 1168, 1184 (2012) ................................................................9

Fed. R. Civ. P. 29(a)(2) ............................................................................1

## INTEREST OF *AMICUS CURIAE*[1]

Nonparty National Redistricting Foundation ("NRF") has a strong interest in a matter of critical importance before this Court regarding the constitutional validity of Texas Election Code § 82.003 ("Section 82.003") under the Twenty-Sixth Amendment to the U.S. Constitution. NRF is dedicated to making the political process fairer and more equitable by pursuing legal challenges that relate to political gerrymandering and engaging in other work to help to foster fair districting maps that more accurately reflect the voters who live within their boundaries and ensure that voters have a full and fair opportunity to choose those who represent them, not the other way around. In connection with its efforts to ensure that the next redistricting cycle is fair and reflects the desires of the electorate in Texas, NRF is currently supporting a challenge by six voters pending in federal district court challenging the constitutionality of Section 82.003 as facially violative of the Twenty-Sixth Amendment. *See generally Gloria v. Hughs*, No. 5:20-cv-00527-OLG. The district court judge has stayed that matter pending this Court's resolution

---

[1] The parties are opposed to the filing of this brief. Nonparty National Redistricting Foundation has filed a motion for leave to file pursuant to Fed. R. Civ. P. 29(a)(2). No party's counsel or other person authored this brief, in whole or in part, or made a monetary contribution to fund its preparation or submission.

of the present matter. *See* Order Staying Case, ECF No. 14, *Gloria v. Hughs*, No. 5:20-cv-00527-OLG (W.D. Tex. June 10, 2020). The *Gloria* Plaintiffs have filed a motion for reconsideration of that stay. *See* Pls.' Opposed Mot. for Recons., ECF No. 15, *Gloria v. Hughs*, No. 5:20-cv-00527-OLG (W.D. Tex. June 15, 2020). However, the rapidly dwindling timeframe for meaningful relief means that the current matter before this Court is becoming increasingly certain to present the only potential means for NRF to be heard on this crucial question of whether Section 82.003 violates the Twenty-Sixth Amendment before the November 2020 election.

Beyond its own interest in this litigation, NRF's amicus brief will meaningfully add to this Court's consideration of the critical issues present here. Counsel for NRF successfully litigated a Twenty-Sixth Amendment challenge to a voting restriction in Florida in 2018, and its brief provides further historical and legislative context that is not present in Plaintiffs' briefing or the briefing of amicus who have already weighed in, and also directly responds to potential concerns raised by the motions panel about the appropriate remedy.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Twenty-Sixth Amendment to the Constitution guarantees that "[t]he right of citizens of the United States, who are eighteen years of age or older, to vote shall

not be denied or abridged by the United States or by any State on account of age."
U.S. Const. amend. XXVI, § 1. By its plain terms, it protects Americans of lawful
voting age against, not only the complete denial of the right to vote on account of a
voter's age, but also against state action that *abridges* that right based on age. The
Amendment's language tracks the Fifteenth Amendment almost exactly, with the
sole difference being the former's substitution of the word "age" for the latter's
protection of "race, color, or previous condition of servitude." U.S. Const. amend.
XV, § 1. Both Amendments require a court to ask whether a challenged election law,
policy, or procedure intentionally discriminates by prohibiting or making it harder
for the class that it protects to exercise their right to vote. Discriminate, of course,
means simply differentiate. And when a statute differentiates, on its face, between
types of voters on account of their race or age, there can be no serious question that
the guarantees set forth in these Amendments have been violated.

Among the issues in this case is the question of whether Texas Election Code
§ 82.003 ("Section 82.003") on its face violates the Twenty-Sixth Amendment. That
provision provides: "A qualified voter is eligible for early voting by mail if the voter
is 65 years of age or older on election day." Put more colloquially, Texas has
extended the right to "no excuse" vote by mail, but only to voters who have happened

to have had their 65th birthday by election day. All other voters must have one of a few statutorily limited "excuses" to cast a ballot by mail. The differential treatment of voters based on their age is unabashedly in Section 82.003's plain text. Thus, the majority of the motions panel that ruled on the Appellants' motion to stay in this case correctly recognized that the Plaintiffs "rightly" "assert . . . that Section 82.003 facially discriminates on the basis of age." *Texas Democratic Party v. Abbott*, 961 F.3d 389, 402 (5th Cir. 2020) ("*TDP*"). As Judge Ho recognized in his concurrence to the same, "it would presumably run afoul of the Constitution to allow only voters of a particular race to vote by mail." *Id*. at 416. It would run afoul of the Constitution in the exact same way to allow only voters above a certain age to vote by mail. And that is precisely what Texas does in Section 82.003.

For the reasons discussed further below, a conclusion that Section 82.003 violates the Twenty-Sixth Amendment is required, by that provision's plain text, independently and absolutely, but also by the Amendment's unique history and the cases that have applied it since ratification. The proper remedy for Section 82.003's discrimination on account of age, moreover, is not—as Judge Ho suggested in his concurrence to the stay order—to find that permitting anyone to vote absentee without an excuse is unconstitutional, but to hold that Texas, having chosen to

-4-

extend the franchise in this way to some of its voters, must offer that same option to all of them, without differentiating between who can access the franchise in this manner on account of the voter's age.

For the reasons that follow, the district court's decision should be affirmed on the grounds that Section 82.003 facially violates the Twenty-Sixth Amendment.

## ARGUMENT

I.    **The Twenty-Sixth Amendment broadly protects against denial or abridgement of the right to vote on account of age.**

The plain language of the Twenty Sixth Amendment evinces a purposeful intent by Congress—guided by contemporaneous Supreme Court decisions—to broadly prohibit restricting access to voting based on a voter's age. The protections of the Fourteenth Amendment were insufficient to achieve the ends sought by the Twenty-Sixth Amendment, leading to the latter's ratification in 1971. While some more veiled attempts to erect hurdles to voters on account of their age may present more difficult, nuanced questions, a provision such as Section 82.003, which on its face conditions an entire means of access to the franchise on nothing other than a voter's age, cannot possibly survive challenge under the Twenty-Sixth Amendment.

In ruling on the motion to stay filed by Appellants in this case, the majority of a motions panel of this Court acknowledged that Plaintiffs "rightly" "assert . . . that

section 82.003 facially discriminates on the basis of age," *TDP*, 962 F.3d at 402, but then concluded, based on a case that applied the Fourteenth Amendment two years before the Twenty-Sixth's Amendment's ratification, that Texas was likely to succeed in its defense of that facial age-based discrimination, *see id*. at 409 (relying on *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802 (1962)). That conclusion cannot be reconciled with either the governing Amendment's plain text, its history, or contemporaneous Supreme Court decisions that necessarily informed the introduction and ultimate ratification of the Twenty-Sixth Amendment.

That the Congress which passed the Twenty-Sixth Amendment considered and understood the use of the word "abridged" in the Amendment to broadly protect voters against not just complete denial of their right to vote, but virtually any means by which a state sought to intentionally differentiate between access to the franchise based on a voters age is first demonstrated by the contemporaneous history of the Fifteenth Amendment. As noted above, the language of the Fifteenth and Twenty-Sixth Amendments are virtually indistinguishable, with the sole substantive difference being that the former prohibits denial or abridgement of the right to vote "on account of race, color, or previous condition of servitude," while the latter does the same "on account of age." *Compare* U.S. Const. amend. XV § 1 *with* U.S. Const.

-6-

amend. XXVI § 1; *see also infra* at 14. The second clauses of both Amendments expressly give "Congress . . . [the] power to enforce" their guarantees "by appropriate legislation." U.S. Const. amend. XV § 2; U.S. Const. amend. XXVI § 2.

In 1965, six years before the passage of the Twenty-Sixth Amendment, Congress used its power under Section 2 of the Fifteenth Amendment to enact the Voting Rights Act ("VRA"), 42 U.S.C. § 1973 et seq. Included in the VRA in 1965 was Section 5, which required that, before certain covered jurisdictions made any changes to a "standard, practice, or procedure with respect to voting," they must have the law pre-cleared for race-based abridgements. 42 U.S.C. § 1973c. Congress thus interpreted its power to ensure that the Fifteenth Amendment's protection against laws that "abridged" the right to vote authorized it to review any "standard, practice, or procedure with respect to voting" to ensure that any such laws did not evince race-based discrimination. The Supreme Court affirmed this interpretation in *South Carolina v. Katzenbach*, 383 U.S. 301 (1966). In that case, South Carolina sought a declaration that certain provisions of the VRA, Section 5 among them, were unconstitutional. *Id.* at 317. The Supreme Court rejected South Carolina's argument by a vote of 8-1, and even the sole Justice who dissented in part from the Court's ruling—Justice Black—agreed that the Fifteenth Amendment's plain language

-7-

protected against "any method of abridgement no matter how subtle." *Id.* at 355 (Black, J., dissenting).[2]

The Twenty-Sixth Amendment was thus proposed in an environment in which Congress's broad understanding of the word "abridged" in the virtually identical Fifteenth Amendment had been recently confirmed by every member of the Supreme Court to reach even the most "subtle" abridgement of the right to vote on account of the features of the class of voters protected by the Amendment. As a result, the Twenty-Sixth Amendment's plain text similarly demands that it be given an expansive reading: it is meant, and must be applied, to forbid state actors from not just outright denying the right to vote on account of a voter's age, but also from acting to abridge that right through age-based discrimination. And, as the motions panel correctly recognized, there can be no serious question that Section 82.003 "facially discriminates on the basis of age." *TDP*, 961 F.3d at 402.

The conclusion that the Twenty-Sixth Amendment was meant to broadly protect against age-based discrimination in voting is also supported by the

---

[2] In *Shelby Cty. Ala. v. Holder*, 570 U.S. 529 (2013), the Supreme Court held the formula in Section 4(b) of the VRA (which was used to determine which states and portions of states were subject to pre-clearance under Section 5) is unconstitutional. *Id.* at 557. The Court's ruling explicitly did not hold Section 5 unconstitutional. *Id.* ("We issue no holding on § 5 itself, only on the coverage formula.").

Amendment's unique and particular history. Had Congress simply wished to lower the voting age to 18 years of age, it could have easily done so with a much more limited amendment. Indeed, Congress had previously enacted legislation that, had history played out a little differently, might have done just that.

By 1970, constitutional amendments to lower the voting age had been proposed over 150 times since 1942 but only one had ever made it out of committee, failing in the Senate. *See* Eric S. Fish, *The Twenty-Sixth Amendment Enforcement Power,* 121 Y ALE L.J. 1168, 1184 (2012). Finally, in 1970, Congress attempted to lower the voting age through legislation rather than through constitutional amendment, this time including a new provision (Title III) in the 1970 renewal of the VRA, which stated that:

> Except as required by the Constitution, no citizen of the United States who is otherwise qualified to vote in any State or political subdivision in any primary or in any election shall be denied the right to vote in any such primary or election on account of age if such citizen is eighteen years of age or older.

VRA Amendments of 1970, Pub. L. No. 91-285, sec. 6, § 302, *invalidated in part by Oregon v. Mitchell*, 400 U.S. 112 (1970). Title III, conspicuously, contained no prohibitions on abridgement of the right to vote, merely prohibiting vote "deni[al]."

Congress passed Title III through a broad reading of its power under Section 5 of the Fourteenth Amendment to enforce the provisions of that Amendment. It was signed into law, but in *Oregon v. Mitchell*, the Supreme Court partially invalidated it, holding that Title III extended beyond Congress's power to enforce the Fourteenth Amendment. *See* 400 U.S. at 124-130 (Black, J., controlling op.). This led Congress to consider again amending the Constitution, both to lower the voting age to 18 for all elections nationwide, but also to more broadly combat age-based voting discrimination. Had Congress only intended to lower the voting age for all elections, it could have simply mimicked Title III's language.

Instead, as the legislative history demonstrates, Congress intentionally chose broader language, acting not only to lower the voting age, but to protect against age-based discrimination, whatever its form, as it had with regard to race-based discrimination with the Fifteenth Amendment before it (and the Nineteenth Amendment with regard to sex-based voting discrimination). Congress was not shy about its intentions: over and over again the legislative record makes clear that its choice of language was fully intended to go further than just lowering the voting age to affirmatively and broadly protect against age-based discrimination in voting. *See, e.g.*, 117 Cong. Rec. H1821 (daily ed. March 23, 1971) (Rep. Poff noting Twenty-

Sixth Amendment meant to "guarantee[] that citizens who are 18 years of age or older shall not be discriminated against on account of age. Just as the 15th amendment prohibits racial discrimination in voting and just as the 19th amendment prohibits sex discrimination in voting, the proposed amendment would prohibit age discrimination in voting . . . "); 117 Cong. Rec. H1822 ( "[W]hereas [Title III] protected only against the denial of the right to vote, the proposed amendment would protect against either the denial or the abridgement of the right to vote."); S. Rep. No. 92-26, at 2 (1971) (explaining Section 1 of the Twenty-Sixth Amendment, as reported out of the Senate by  SJR 7, is meant to "embod[y] the language and formulation of the 19th Amendment, which enfranchised women, and that of the 15th amendment, which forbade racial discrimination at the polls"); 117 Cong. Rec. H1826-1827 (Rep. Pepper noting that "[w]hat we propose to do in the Federal enfranchisement of those 18, 19, and 20 years of age is exactly what we did in enfranchising the black slaves with the 15th amendment and exactly what we did in enfranchising women in the country with the 19th Amendment").

The Twenty-Sixth Amendment's broad scope reflects the historical context in which it was enacted. As the California Supreme Court explained the year the Amendment was ratified, "America's youth entreated, pleaded for, demanded a

-11-

voice in the governance of this nation. . . . And in the land of Vietnam they lie as proof that death accords youth no protected status." *Jolicoeur v. Mihaly*, 5 Cal. 3d 565, 575 (1971). The Amendment's backers argued "that the frustration of politically unemancipated young persons, which had manifested itself in serious mass disturbances, occurring for the most part on college campuses, would be alleviated and energies channeled constructively through the exercise of the right to vote." *Walgren v. Howes*, 482 F.2d 95, 101 (1st Cir. 1973) (footnote omitted). Accordingly, "[t]he goal was not merely to empower voting by our youths but was *affirmatively to encourage their voting*, through the elimination of unnecessary burdens and barriers, so that their vigor and idealism could be brought within rather than remain outside lawfully constituted institutions." *Worden v. Mercer Cnty. Bd. of Elections*, 61 N.J. 325, 345 (1972) (emphasis added); *accord Jolicoeur*, 5 Cal. 3d at 575 (Senate Report for SJR 7, later enacted as the Twenty-Sixth Amendment, "indicates that Congress . . . disapproved of . . . treatment . . . that it [feared] would give youth 'less of a sense of participation in the election system' and '*might . . . dissuade them from participating* . . . ,' a result inconsistent with the goal of encouraging '*greater political participation on the part of the young*'") (quoting S. Rep. 92-26, 1971 U.S.C.C.A.N. 362) (emphasis added).

-12-

Making access to mail voting contingent upon one's reaching their 65th birthday by election day unquestionably dissuades young people from participating in the franchise. This would be true under any circumstances, but it is all the more unavoidably so in the context of the current, unprecedented health crisis, in which young people are increasingly believed to be among some of the most potent vectors of the virus, often unwittingly spreading it to loved ones, many without ever knowing they were infected. At the same time, we are presently experiencing another moment in history in which young Americans are again taking to the streets in large numbers to express their broad political dissatisfaction, this time protesting against institutional racism, including, in particular, police brutality against Black and Brown Americans. The Twenty-Sixth Amendment was meant to ensure that these young citizens had a free and clear path to expressing their political activism not only in the public square, but through the ballot. Section 82.003 stands in the way.

## II.    The Twenty-Sixth Amendment provides greater protections against age-based discrimination in voting than the Fourteenth Amendment, including to flatly prohibit facial discrimination in voting on account of age.

Three independent, equally important considerations require the conclusion that the Twenty-Sixth Amendment must be understood and applied (1) to provide greater protections to voters against age-based discrimination than the Fourteenth

Amendment, including (2) to prohibit intentional differential treatment of voters on account of their age, in the same way the Fifteenth Amendment protects voters from such discrimination based on their race.

First, the statutory text of the Twenty-Sixth Amendment itself requires this conclusion. By tracking the language previously used in the Fifteenth and Nineteenth Amendments, which are broadly understood to prohibit both outright vote denial and subtler forms of discrimination in voting based on race and sex, respectively, Congress clearly indicated that the amendments should be read *in pari materia*, requiring that the Twenty-Sixth Amendment be subject to an analysis similar to that of those other Amendments. *Cf. Atl. Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932) ("Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.").

Second, the history of the Twenty-Sixth Amendment, including Congress's prior attempts to lower the voting age for all elections in Article III, the Supreme Court's decision in *Mitchell*, and the fraught historical context in which it was enacted, *see supra* at 6-12,  all further evince that the Twenty-Sixth Amendment was an intentional attempt not just to expand the franchise, but to affirmatively protect against even the most subtle forms of age discrimination in voting.

-14-

Third, and consistent with this language and legislative history, courts that have considered challenges brought under the Twenty-Sixth Amendment have evaluated it under the same standards as the Fifteenth Amendment and have found affirmatively that the Twenty-Sixth Amendment must be read to "'nullif[y] sophisticated as well as simple-minded modes of discrimination. It hits onerous procedural requirements which effectively handicap exercise of the franchise . . . although the abstract right to vote may remain unrestricted[.]" *Jolicoeur*, 5 Cal. 3d at 571 (quoting *Lane v. Wilson*, 307 U.S. 268, 275 (1939) (15th Amendment case)); *see also Luft v. Evers*, 963 F.3d 665, 673 (7th Cir. 2020) (noting district court "treated arguments under the Twenty-Sixth Amendment (for age) the same as those under the Fifteenth Amendment (for race)" and that the court "agree[s] with that assessment"); *League of Women Voters of Fla. v. Detzner*, 314 F. Supp. 3d 1205, 1223 (N.D. Fla. 2018) ("[T]he Amendment must protect those blatant and 'unnecessary burdens and barriers' on young voters' rights.") (quoting *Worden*, 61 N.J. at 345); *id.* at 1221 (citing cases and noting "[a] consensus . . . emerging" among courts that have recently considered Twenty-Sixth Amendment challenges that they should be evaluated using the same standards as those used in to consider Fifteenth Amendment challenges); *Worden*, 61 N.J. at 345    (finding Twenty-Sixth

Amendment's intent "was not merely to empower voting by our youths but . . . affirmatively to encourage their voting" to harness their political interest and move it to the ballot box from the streets); *Colo. Project-Common Cause v. Anderson*, 178 Colo. 1, 8 (1972) (holding based on "[h]istory and reason" that the 26th Amendment's "prohibition against denying the right to vote to anyone eighteen years or older by reason of age applies to the entire process involving the exercise of ballots and its concomitants").[3]

The Supreme Court has considered the scope of the Twenty-Sixth Amendment on only one occasion, but that decision, too, is consistent with the discussion above and strongly weighs in favor of finding Plaintiffs likely to succeed on their challenge here. Specifically, in *Symm v. United States*, 439 U.S. 1105 (1979), the Court summarily affirmed a district court's conclusion that a voter-registration practice that made it more difficult for students to register was unconstitutional. *See United States v. Texas*, 445 F. Supp. 1245, 1261-62 (S.D. Tex. 1978). The *Texas* decision quoted extensively from the opinion in *Jolicoeur*, cited

---

[3] Indeed, although it did not carry the day when the motions panel considered the Appellants' motion for a stay, Judge Ho in his concurrence similarly noted that the language of the Twenty-Sixth Amendment "closely tracks" the Fifteenth, indicating that it is more appropriately applied through that lens, rather than the lens of the Fourteenth, as the majority held in that order. *See TDP*, 961 F.3d at 416.

above, in which the California Supreme Court found that a registrar's refusal to register unmarried minors at addresses other than their parents' addresses "violate[d] the letter and spirit of the 26th Amendment," as it would "clearly frustrate youthful willingness to accomplish change at the local level through the political system"; "give any group of voters less incentive 'in devising responsible programs' in the town in which they live"; and guarantee the franchise to "[o]nly the most dedicated partisan." *Jolicoeur*, 5 Cal. 3d at 575; *see also Texas*, 445 F. Supp. at 1256-57.[4]

All of this is to say that there is virtually no support for treating the Twenty-Sixth Amendment claim the way the majority of the motions panel did in issuing the stay order in this case. There, the majority focused on *McDonald v. Board of Election Commissioners of Chicago*, a decision that had nothing to do with the Twenty-Sixth Amendment. In fact, it was decided (as the panel acknowledged) two years before the Twenty-Sixth Amendment was even ratified. *See TDP*, 961 F.3d at 409. Nevertheless, the panel justified its conclusion that *McDonald* provided the appropriate framework to apply to Appellants' Twenty-Sixth Amendment claim by

---

[4] In a similar decision, a federal district court in the Eastern District of Texas held in 1971, the same year that the Amendment was enacted, that a Texas statute requiring heightened standard for individuals under 21 to establish residency for voting violated the Twenty-Sixth Amendment. *Ownby v. Dies*, 337 F. Supp. 38, 39 (E.D. Tex. 1971).

asserting that, "[t]he Twenty-Sixth Amendment is not a major player in federal litigation." *Id*. at 408.

While that may be a technically accurate statement, it is also true that, since the Twenty-Sixth Amendment was ratified, there has been a small, but largely consistent body of case law that has evaluated it on its own terms – not through the lens of the entirely ill-fitting *McDonald* or the Fourteenth Amendment more broadly – and has applied it consistent with its text and the history discussed above, as well as consistent with the recognition that as a simple doctrinal matter, it *must* add some additional protection beyond that found in the previously-ratified Fourteenth Amendment.

III.  **Section 82.003 is unconstitutional because it facially discriminates in voting on the basis of age.**

When the Twenty-Sixth Amendment is properly applied, the unavoidable conclusion is that Section 82.003 is unconstitutional. It facially limits access to the franchise through mail voting on the basis of age, discriminating against voters in violation of the Twenty-Sixth Amendment's plain protections. This Court need conduct no further inquiry to hold Section 82.003 unconstitutional.

As noted above, Texas has decided to allow voters to vote by mail without an excuse, but only if they have turned 65 by election day. Voters younger than 65 are

categorically prohibited from casting a ballot in the same way, unless they fit into a handful of narrow (non-age-based) exceptions. *See* Tex. Elec. Code §§ 82.001-82.002, 82.004 (listing "excuse" based exceptions for mail voting as applicable where the voter: (1) expects to be absent from the county on Election Day, (2) has a sickness or physical condition that prevents them from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring their health, (3) is "expected [to] or likely [will be in] confinement for childbirth," or (4) is an otherwise eligible voter confined in jail). Voting early by mail is thus readily available to certain voters, but categorically denied to others entirely on account of their age.

It is irrational to reach any conclusion other than that Section 82.003 facially discriminates against voters "on account of age." U.S. Const. amend. XXVI, § 1. And, in fact, the motions panel concluded that, in this case, the Plaintiffs "rightly" "assert[ed] that section 82.003 facially discriminates on the basis of age." *TDP*, 961 F.3d at 402. The panel's mistake, as discussed above, was to go on to conclude that there is a means of applying the Twenty-Sixth Amendment whereby a statute that

facially discriminates on the basis of age in voting may nonetheless be affirmed as constitutional. *See id.* If there is such a case, this is not it.

If anything, Section 82.003's facial and categorical prohibition on individuals under 65 voting by mail due solely to age is a significantly greater abridgement of the right to vote than those found by courts previously to violate the Twenty-Sixth Amendment—including in decisions issued by Texas federal courts specifically. *See, e.g.*, *Texas*, 445 F. Supp. at 1261, *aff'd sub nom. Symm*, 439 U.S. at 1105 (holding heightened residency requirements for student voters to register to vote violates Twenty-Sixth Amendment); *Ownby*, 337 F. Supp. at 39; *see also Detzner*, 314 F. Supp. at 1223 (finding Secretary of State's opinion prohibiting locating early voting sites on college campuses violated Twenty-Sixth Amendment); *Jolicoeur*, 5 Cal. 3d at 582 (holding that subjecting younger voters to different registration requirements violated Twenty-Sixth Amendment); *Worden*, 61 N.J. at 348-49 (denial of the right to register to vote in the communities where college residences were located violated the Twenty-Sixth Amendment).

This straightforward fact—that the law facially discriminates on the basis of age—is all that this Court need determine to hold the law unconstitutional. No inquiry into legislative purpose is necessary when the suspect classification appears

on the face of the statute. *See Walgren v. Bd. of Selectmen of Town of Amherst*, 519 F.2d 1364, 1367 (1st Cir. 1975) (finding intentional discrimination standard satisfied where restriction is "imposed solely or with marked disproportion on the exercise of the franchise by the benefactors of [the] amendment"); *see also Shaw v. Reno*, 509 U.S. 630, 642 (1993) ("No inquiry into legislative purpose is necessary when the racial classification appears on the face of the statute."). This is because facially discriminatory laws reveal intentional discrimination. *See, e.g.*, *Loving v. Virginia*, 388 U.S. 1, 11–12 (1967) (holding Virginia law prohibiting interracial marriage violated the Constitution); *Nixon v. Herndon*, 273 U.S. 536, 541 (1927) (holding statute preventing Black party members from participating in party primary violated the Constitution); *Strauder v. Virginia*, 100 U.S. 303, 310 (1880) (holding West Virginia law limiting juries to white men violated the Constitution); *see also* 3 Ronald D. Rotunda & John E. Nowak, TREATISE CONSTITUTIONAL LAW § 18.4 (10th ed. 2012) (When a law establishes an impermissible classification on its face, "by its own terms classif[ing] persons for different treatment . . . there is no

problem of proof and the court can proceed to test the validity of the classification by the appropriate standard.").

As courts have explained, a law that is facially discriminatory under the Fifteenth or Twenty-Sixth Amendment is unconstitutional regardless of any interests the state may claim the law advances, as the constitutional prohibitions of both amendments are absolute. *See, e.g.*, *Prejean v. Foster*, 227 F.3d 504, 519 (5th Cir. 2000) ("Unlike the Fourteenth Amendment claim, there is no room for a compelling state interest defense, as the Fifteenth Amendment's prohibition is absolute."). There are simply no state interests which could render Section 82.003's age-based discrimination constitutional given the absolute prohibition on laws which discriminate on the right to vote on the basis of age embodied in the Twenty-Sixth Amendment.

## IV. The appropriate remedy is to hold that, because Texas has chosen to offer "no excuse" mail voting to voters of a certain age, it must permit all voters over 18 to access the franchise in this way.

Basic principles of severability and statutory interpretation demonstrate that the appropriate remedy here is to sever the unconstitutional portion of Section 82.003, with the result being that the right to vote early by mail is extended to all qualified Texas voters. The unconstitutional portion of Section 82.003 can be severed, and its enforcement enjoined, while the rest of the statute remains in effect

because courts do not invalidate entire statutes when the unconstitutional portions can be excised. *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329 (2006). Rather, the Supreme Court has explained "the 'normal rule' is that 'partial, rather than facial, invalidation is the required course,' such that a 'statute may . . . be declared invalid to the extent that it reaches too far, but otherwise left intact.'" *Id.* (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985)); *see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,* 561 U.S. 477, 508, (2010) ("'Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem,' severing any 'problematic portions while leaving the remainder intact.'" (quoting *id.* at 328–29)).

Whether unconstitutional provisions of a state statute are severable is a matter of state law, and Texas state law dictates that the unconstitutional portion of Section 82.003 can and should be severed here. *Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011) (citing *Virginia v. Hicks*, 539 U.S. 113, 123 (2003)). In Texas, severability of statutes is governed by the Code Construction Act, Section 311.032 of the Texas Government Code. *Id.* Neither the present enactment of the Texas Election Code, nor specifically Section 82.003, contain a

severability clause or a proscription on severability. Hence, Texas Government Code

Section 311.032(c) applies:

> In a statute that does not contain a provision for
> severability or nonseverability, if any provision of the
> statute or its application to any person or circumstance is
> held invalid, the invalidity does not affect other provisions
> or applications of the statute that can be given effect
> without the invalid provision or application, and to this
> end the provisions of the statute are severable.

Tex. Gov't Code § 311.032(c); *see also Quick v. City of Austin*, 7 S.W.3d 109, 115

(Tex. 1999) ("[I]f any provision of the statute is held to be invalid, the invalidity

does not affect other provisions that can properly be given effect in the absence of

the invalid provisions.").

Here, the unconstitutional portion of section 82.003 is the provision which

requires that only voters over the age of 65 be allowed to vote early by mail without

excuse. The rest of the law can and should be given effect without the specific

unconstitutional clause, which the Court should sever and declare as null and void,

as shown in the stricken language that follows:

> A qualified voter is eligible for early voting by mail ~~if the voter is 65
> years of age or older on election day~~.

Even if basic principles of severability and statutory interpretation did not

require extending the benefit of early voting to all qualified voters here (which they

-24-

do), Appellants' suggestion that the appropriate remedy would be to require all citizens to fit a narrow class of exceptions to vote early by mail would still be wrong. Appellants base this argument on the fact that, in certain limited circumstances in the Equal Protection clause context, equal treatment may be accomplished by either the "withdrawal of benefits from the favored class" or "by extension of benefits to the excluded class." *Heckler v. Mathews*, 465 U.S. 728, 740 (1984); *see also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1698 (2017). But no such distinction has been made in the Fifteenth Amendment context, which provides the appropriate analogy for Twenty-Sixth Amendment claims; the proper remedy for abridgment of the fundamental right to vote based on age is to permit the excluded party (voters younger than 65) to engage in the activity they were excluded from on account of their age (absentee voting). Indeed, when the Supreme Court held that Texas's white primary violated the Fifteenth Amendment, it did not end the practice of holding primaries; instead, it ordered the primary to be opened to all voters, regardless of race. *See Smith v. Allwright*, 321 U.S. 649, 665 (1944). That is precisely the

appropriate remedy for a provision that discriminates on age, just as it would be if the provision discriminated on race.

## CONCLUSION

The history and language of the Twenty-Sixth Amendment demonstrate that the Amendment prohibits discrimination in the mechanics of voting far beyond merely absolute denial of the right to vote, in the same way that the Fifteenth Amendment prohibits similar discrimination on the basis of race. The facial discrimination evident on the face of Texas's Absentee Ballot Age Restriction cannot pass muster under this appropriate constitutional test. This Court should remedy the statute's unconstitutionality by severing the unconstitutional portion of Texas Election Code § 82.003 and leaving the statute otherwise intact, providing all Texans with the opportunity to utilize early voting by mail.

DATED:  July 28, 2020                    PERKINS COIE LLP

                                        By: *Jacki Anderson*

                                            Marc E. Elias
                                            Elisabeth C. Frost*
                                            Jacki Anderson
                                            John M. Geise*
                                            Stephanie Command*
                                            PERKINS COIE LLP

-26-

700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
efrost@perkinscoie.com
jgeise@perkinscoie.com
scommand@perkinscoie.com

*Counsel for the Amicus Curiae*

*\*Applications for admission forthcoming*